In Re F. Ray Paddock.

February Term, 1945.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed May 1, 1945.

_Alban J. Parker,_ Attorney General, for the State.

_Lindley S. Squires_ for the respondent.

Buttles, J. This proceeding for the disbarment of the respondent, an attorney at law of this Court, was commenced by a presentment filed by the attorney general. After the respondent had filed an answer a commissioner was appointed who heard evidence and has found and reported facts. It appears therefrom that the respondent, who is 44 years old, was born in Bennington where he attended schools through the high school, and graduated from Norwich University in the class of 1921. He studied law in the office of a local attorney and some time after being admitted to the Vermont bar in 1933 he opened his own law office in Bennington. He practiced in municipal and county courts and soon built up a good general practice, including a substantial collection business.

Other findings material to our consideration of the case are as follows. One Solomon Waite of Bennington, who conducts a wholesale gas and oil business, prior to October, 1941, gave the respondent several accounts for collection and told him that if he did a good job with those he would give the respondent all of his

collections. At that time the respondent told Waite that his charge for collection was fifty per cent and Waite replied that he did not care about the charges but when he gave anyone an account for collection he wanted action.

On or about Oct. 20, 1941, Waite gave the respondent an account against one James A. Hill for collection. The total amount of this account was $638.75 including interest in the sum of $57.26. The respondent brought a county court suit on this account which was duly entered in court a day or two after suit was brought. On Oct. 28, 1941, Hill paid the respondent $150. on the account and during the following month Hill made two payments to him of $100.00 each. The balance of the account including costs was paid to the respondent by January 15, 1942, and he thereupon entered the case "settled and discontinued" in open court, and wrote Hill acknowledging payment in full.

In November and again in December, 1941, the respondent saw Waite and told him of the payments Hill had made. He offered to pay Waite something on the account if he would come to the respondent's office, but Waite said to wait until he had it all collected. Early in January, 1942, the respondent told his client that the balance of the Hill account would be paid within a week or ten days and before the rising of the December term of court. It was in fact so paid, but the respondent did not send notice to Waite that the account had been paid in full. Waite learned of such payment from Hill the following May and he then went at once to the state's attorney who dictated a letter which Waite signed and sent to the respondent stating that unless the respondent settled the Hill matter at once some action would be taken. Upon receipt of this letter the respondent at once called Waite and asked him to come to the respondent's office. Waite did so and the respondent then told him that he had collected the Hill account in full and had used the money. He offered to give Waite a note signed by himself and endorsed by his father and mother who owned four houses in Bennington and then had a borrowing capacity at the North Bennington Bank of at least enough to cover the amount involved. There was some discussion as to fees due the respondent for collecting this account which he claimed was under their general agreement of fifty percent, but Waite said that he was in a jam and must raise $500. and wanted the respondent to accept 15%

as a collection fee. It was finally agreed that the respondent would give Waite a note for $500. signed by the respondent's father and mother in settlement of the Hill account, and in consideration of this adjustment of fees Waite agreed to give the respondent many more accounts for collection, and did in fact give him 25 or 30 other accounts.

Waite discounted the above mentioned note at the North Bennington Bank on the day following its receipt by him. It was agreed that when that note matured the respondent should pay what he could on it, at least $25.00, and give a renewal note for the balance and that this method should be followed until payment had been made in full. After the note was given the respondent was employed on some matters by Waite. In December, 1942, Waite employed him to do some work in connection with an application for gas and oil for which the respondent made a charge of $10.00. He told Waite to take the money to the bank and apply it on the note, but Waite replied that the note was riding all right, and paid him the $10.00 in cash.

As the various renewal notes matured the respondent, who was away from Bennington during this time as hereinafter appears, was usually prompt in sending a renewal note and a check to cover the interest. Through no fault of his in failing to get a renewal note to the bank in time the renewal note which matured in January, 1944, was protested. This matter was fixed up and a new note maturing in May, 1944, was given. Through an oversight by someone at the bank the renewal note which the respondent sent to the bank in May last was overlooked, and this caused protest notices again to be sent to those interested, but the error was straightened out and no protest fees were collected. In June, 1944, Waite, without the knowledge of the respondent, took the latter's note from the bank and gave his own note in place of it. Sometime in 1944 the respondent paid $50. to apply on the principal of the note and a few days before the hearing he left with the bank the money to pay the note in full. The money to make the final payment of principal of $450. was loaned by the bank to the respondent upon his note signed by his father and mother, that is, by the same persons who signed the note originally given to Waite.

In December, 1941, when the news of the attack on Pearl Harbor was received the respondent was engaged in the trial of a

case in county court. He was called from that trial as a member of the state guard and served for two weeks as a guard at the Whitingham dam. From there he went to Pittsfield, Mass., where he entered the private employment of the General Electric Company as a guard for their plant there. After serving there for fifteen months he went to East Hartford where he served as a guard at the aircraft plant, later returning to his former position at Pittsfield where he was employed at the time of the hearing. During his first period of service at Pittsfield he spent his time off each week at his office in Bennington, giving him a day and a half to two days each week in his office.

The respondent's reputation for truth and veracity, honesty and fair dealing in Bennington is good. While he converted the money collected on the Hill account to his own use, he made no attempt to conceal the fact that he had made this collection and he always intended that Waite should sometime receive what was due him on this account.

The respondent kept his bank account in the name of "F. R. Paddock, Trustee." All money in this account he treated as his own. After his marriage his wife had a checking account in the same bank in her name and he instructed the bank that in case of an overdraft on his wife's account the bank should take funds from his account to make her account good. The respondent gave no testimony concerning this matter and no finding is made as to whether this arrangement caused his account to be depleted without his knowledge.

From the findings it is clear that the respondent failed to act with all good fidelity to his client and thereby violated his oath as an attorney. In disbarment proceedings a court is not confined to answering the question whether or not the respondent should be disbarred, but is at liberty to do, and should do, whatever behooves it in the exercise of its jurisdiction over attorneys as officers of the Court. *In re Aldrich,* 86 Vt 531, 539, 86 A 801. The discretion which we exercise is similar to that which should be used by a trial court in imposing sentence for an offense for which the statute provides a maximum and a minimum penalty. Much should depend upon the degree of culpability indicated by the facts of the case.

Among the circumstances shown by the findings in this case

which suggest leniency are: the respondent's good reputation for truth and honesty and fair dealing; the absence of any attempt by him to conceal the shortage and the possibility that it might have been caused by an authorized person's drawing upon the respondent's bank account without his knowledge; the restitution that was made, although not as promptly as it probably would have been except for circumstances beyond the control of the respondent; the acquiescence of the client in the adjustment made by the respondent, his attitude toward the respondent and his later employment of him; the extent to which the respondent was engaged in war work activities just before and after the time when the conversion seems to have occurred.

The main purpose of this proceeding is the protection of the court and of the public from the commission of like offenses by this respondent or by others. We have concluded that under the circumstances of this case this purpose can be accomplished by a severe reprimand of the respondent. In so doing we are giving the respondent the utmost benefit of the findings that are favorable to him. Even so the fact remains that there was a conversion of the client's funds. Assuming that such conversion was not wilful the respondent's conduct was, none the less, reprehensible, first in treating the bank account in which the client's funds were deposited as his own, and thereby mingling the funds of the client with his own, and secondly in allowing another person to have access to that account thereby making it possible for the client's funds to be withdrawn without the knowledge of the client or himself.

*Judgment that the respondent be and hereby is reprimanded and censured.*