340 So.2d 301 (1976)
In re Judge William H. DANIELS, City Court of Baton Rouge, Parish of East Baton Rouge, State of Louisiana.
No. 58167.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 14, 1976.
*302 Sam J. D'Amico, Lewis O. Unglesby, D'Amico & Curet, Baton Rouge, for Judge William H. Daniels.
William R. Alford, Jr., Sp. Counsel, New Orleans, for the Judiciary Commission of Louisiana.
MARCUS, Justice.
Pursuant to the authority set forth in La.Const. art. 5, § 25(C)(1974), the judiciary commission, after complying with rule 23 of the rules of the supreme court, unanimously[1] found Judge William H. Daniels, city court of Baton Rouge, guilty of "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute." The commission recommends to this court that respondent judge be censured and assessed with all witness and transcript costs incurred in the hearing.[2]
*303 On January 15, 1976, the commission issued written notice to respondent advising him of the planned proceedings to inquire into two listed charges against him. Charge I set out factual allegations for a charge of "wilful misconduct relating to his official duty." Charge II set out the same factual allegations for a charge of "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Notice of the hearing to be held before the commission concerning the discipline of respondent was also given. After the hearing, the commission found respondent not guilty of Charge I.[3] Hence, we are concerned solely with the findings of the commission in regard to Charge II in our review of the commission's recommendation of discipline of respondent.
Authority for the discipline of a judge is set out in La.Const. art. 5, § 25(C) (1974):
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.[4]
In charging respondent with persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, Charge II alleges the following facts:
A. On or about August 19, 1975, giving a defendant, one Robert M. Garner, who was on trial before you, unrepresented by counsel, charged with two separate and distinct traffic violations, a choice as to which charge he would be found guilty of and which charge he would be acquitted of, and thereafter rendering your decision in accordance with the defendant's choice, thereby giving the appearance of deciding guilt or innocence by a means other than on the evidence before you which it was your duty to do.
B. During the period of May 1, 1975, to August 31, 1975, on numerous occasions you gave the appearance of deciding the guilt or innocence of various defendants on trial before you by the flip of a coin.
C. On or about June 30, 1975, when Police Officer Richard Fancher testified in your court as a witness on his off-duty time in response to a subpoena, you gave the appearance of arbitrarily and capriciously refusing to authorize payment of a witness fee to him.
D. During the past year, more or less, on several occasions you gave the appearance of deciding the guilt or innocence of defendants before your court based upon the secret written ballot of persons present in the courtroom, a procedure which you directed.
E. On or about June 12, 1975, when Police Officer Daniel Altazan, a witness in your court, could not positively identify two defendants whom he had, about nine months before, charged with running *304 red lights, you found those defendants not guilty and then announced, or caused to be announced, that all other persons in the courtroom who had red light citations were free to go. The charges against them were arbitrarily dismissed without trial or hearing, thereby giving the appearance that other police witnesses present were incompetent and could not positively identify the persons whom they had charged with running red lights.
F. On more than one occasion, having found a defendant before you guilty, you questioned the defendant for the purpose of ascertaining the amount of money the defendant had on his person and then, upon being told the amount, you assessed a penalty against the defendant in that amount.
G. On at least one occasion, after trial and before judgment, you questioned the defendant to ascertain, and did ascertain, the amount of money he had on his person and whether he would be willing to pay that amount if found guilty, and having received the defendant's affirmative reply, you thereupon found the defendant not guilty, thereby giving the appearance of deciding the defendant's guilt or innocence on factors not relevant to that issue.
H. That, due to the above enumerated incidents as well as others, you manifested at the very least a general attitude of frivolity in the trial of cases before you which has brought the judicial office into disrepute.
Prior to the hearing, several motions and an exception were filed by respondent, viz., a motion for a more definite statement, a motion to strike, a motion to produce and an exception of no cause of action. All motions and the exception were overruled. The commission furnished respondent with a copy of the report of the state police concerning the investigation of the matter and with a list of witnesses to be called at the hearing.
Respondent does not urge before this court any objections to the rulings of the commission on the motions for a more definite statement and to produce; however, he does argue that the commission erred in overruling the other motions and the exception.
In the motion to dismiss, respondent alleges that the commission failed to properly advise him of the name of the complainant in accordance with section 3(b) of rule 23 of the rules of this court. The motion avers that Michael Hill made an oral complaint to the chief executive officer of the commission (judicial administrator) in October of 1975 which was electronically taped and subsequently signed by Hill. The commission answered that it made the preliminary investigation on its own motion and not upon the statement of a complainant.
Section 3(a) of rule 23 is the counterpart of La.Const. art. 5, § 25(C) (1974).[5] Section 3(b) of rule 23 recites:
The judge shall be notified of the investigation, the nature of the charge, and the name of the person making the complaint, if any, or that the investigation is on the commission's own motion, and shall be afforded reasonable opportunity in the course of the preliminary investigation to present such relevant and/or material matters as he may choose. (Emphasis added.)
Respondent was duly notified on November 5, 1975 that a preliminary investigation *305 was being made by the commission on its own motion, and respondent was afforded reasonable opportunity in the course of said investigation to present such relevant and/or material matters as he might choose. After the preliminary investigation was completed, the commission concluded that a hearing should be instituted and so notified respondent on January 15, 1976. The hearing was held before the commission on February 19 and 20, 1976 and on April 22 and 23, 1976. We find no violation of section 3(b) of rule 23. The commission instituted the preliminary investigation on its own motion and not upon the complaint of Michael Hill. Information was supplied to the commission from various sources, including the statement given by Hill. In any event, the commission furnished respondent with a list of the names of witnesses to be called at the hearing. Michael Hill was listed as a witness. Respondent makes no showing that he was prejudiced by the action of the commission in its failure to supply the name of Michael Hill as the person making the complaint.
Respondent argues in support of his motion to strike and exception of no cause of action that he was charged with giving the "appearance" of doing certain acts and that this did not inform him of the nature of the charges against him. We do not agree. The factual allegations particularized respondent's conduct alleged to be prejudicial to the administration of justice that brought the judicial office into disrepute. We find that these factual allegations were sufficiently specific to fairly inform respondent of the nature of the charges against him. In re Haggerty, 257 La. 1, 241 So.2d 469 (1970). Accordingly, the commission correctly overruled the motion and exception.
At the hearing, sixteen witnesses were presented by the commission and forty witnesses, including respondent, were called on behalf of respondent. After the hearing, the commission made the following findings:
The Commission unanimously finds Respondent guilty of Charge II, which alleges persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in the following particulars, except that Commissioner Flynn disagrees with the findings of paragraph C:
A. On or about August 19, 1975, allowing Robert M. Garner, on trial for multiple traffic offenses arising from a single incident, to choose the offense to which the accused desired to plead guilty, and dismissing the remaining charge after sentencing the accused on the charge to which the accused pled. The Commission finds that in so doing, Respondent breached his responsibility as judge by deciding the guilt or innocence of an accused by other than the evidence presented in court.
B. On numerous occasions between May 1, 1975 and August 19, 1975, Respondent engaged in conduct in open court which gave the appearance of deciding the guilt or innocence of defendants upon the toss of a coin. The Commission also finds that while Respondent admitted coin tossings but denied deciding the outcome of cases on the results thereof, Respondent's conduct was such as to give the appearance of so deciding cases.
C. On or about June 30, 1975, arbitrarily refusing to approve payment of the witness fee due Officer Richard Fancher for off duty court appearance in obedience to summons issued in a traffic violation case. The Commission finds that when Fancher informed the City Prosecuting Attorney that Fancher could not identify the accused because the arrest occurred several months earlier, Respondent's refusal to approve the witness fee because it had not been earned resulted in Fancher not being paid for his court appearance. The Commission is of the opinion that when Officer Fancher appeared in response to the summons, the appearance fee was due him.
Commissioner Flynn is of the opinion that Respondent acted within his discretionary authority in refusing to approve payment of the witness fee and that to *306 deny this authority would force the courts to award witness fees under all circumstances.
D. On approximately three occasions during late 1974 and the calendar year 1975, Respondent conducted courtroom proceedings which gave the appearance of deciding the guilt or innocence of unrepresented accused parties by jury ballots composed of panels of spectators; in one instance, police officers, in another a civics class, and in another a Cub Scout group. While Respondent denied having decided guilt of innocence on the basis of these jury ballots, he admitted that a favorable verdict from such a jury might result in the mitigation of damages.
E. On or about June 12, 1975, Respondent engaged in courtroom conduct which gave the impression that Respondent dismissed all remaining traffic light violation cases on the day's docket after the arresting officers failed to identify the accuseds in the first two such cases called. The Commission finds that on the day in question, the first two such cases were submitted by the City Prosecutor without evidence when the Prosecutor was informed the arresting officers could not make identification, which submission resulted in Respondent having to render verdicts of `not guilty' in the submitted cases. The Commission further finds that respondent then indicated in open court that in view of the failure of the arresting officers to identify the first two such accuseds, Respondent could not find verdicts of guilty in the remaining similar cases on the day's docket. While the Commission finds some conflicting evidence regarding the details of this specification, the Commission finds that Respondent's publicly expressed attitude led the prosecuting officer to submit all similar remaining charges on the docket without presenting evidence or determining whether identification could have been made in the remaining cases. The Commission finds the prosecuting officer was so prompted by the reasonable belief Respondent would not find any traffic light violator guilty that, day, regardless of the evidence presented. The Commission finds Respondent's conduct in this regard highly improper.
F. On numerous occasions Respondent admittedly imposed fines predicated upon the amount of money the convicted party had on his person. While the Commission notes Respondent's explanation he so acted in recognition of Federal Circuit Court of Appeal jurisprudence concerning the extent to which the needy or indigent may be fined, the Commission finds it a dereliction of judicial duty to assess fines on the amount an individual has on his person at the time of sentencing.
G. That because of the above enumerated incidents, and Respondent's admitted frequent use of such terms as `hey man,' `bread,' meaning money, `what are you holding,' meaning how much money an accused had on his person, `how much do you have in your shoe,' meaning how much an accused was hiding in his shoe or otherwise carrying in an unusual manner, and `cat,' meaning person, in Respondent's dialogue with blacks and so-called `hippies,' Respondent created an air of frivolity in Respondent's court such as to hold the judicial process up to ridicule. While the Commission recognized there is evidence of record indicating Respondent's conduct in this regard was intended to create an air of informality and to ease and relax defendants, the Commission finds Respondent's use of such vernacular expressions was of such a nature as to cause the judicial office to be held in disrepute.
Respondent urges that the commission erred in its findings of fact and in its failure to apply the proper standard of proof, i. e., clear and convincing evidence, required in such a matter as here presented.
Before this court can censure, suspend with or without salary, remove from office, or retire involuntarily a judge, proof of the charge or charges must be clear and convincing. In the instant matter, the record must clearly and convincingly establish that respondent was guilty of "persistent *307 and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute." La.Const. art. 5, § 25(C) (1974).[6]
After a careful review of the record, we are convinced that the evidence abundantly supports the findings of fact of the commission. The proof is clear and convincing. We will briefly discuss the proof adduced at the hearing and the findings of fact as to each specification of the charge against respondent.

GARNER INCIDENT
Robert M. Garner appeared before respondent on two traffic offenses arising from a single incident. He was not represented by counsel. At the conclusion of the case, Garner was permitted to select the offense of which he desired to be found guilty. After making the choice, he was found not guilty of the other offense. Respondent admitted such action but explained that it was based on his opinion that the accused could not legally be found guilty of both offenses because of double jeopardy. By allowing Garner to choose which of the two offenses he would be found guilty of, respondent abdicated his responsibility of deciding the guilt or innocence of Garner based solely on the law and evidence adduced at trial. At the very least, respondent gave the appearance of allowing other factors, namely, Garner's will, to dictate the outcome of the proceedings.

COIN FLIPPING
We find that on numerous occasions during the period in question, respondent engaged in conduct in open court that gave the appearance he was deciding the guilt or innocence of defendants upon the toss of a coin. However, evidence does support respondent's position that, prior to the coin flipping, a decision of guilt or innocence had already been made by respondent and transmitted by him to his bailiff either on a slip of paper or by a pre-arranged signal. Nevertheless, we agree with the commission that respondent's conduct gave a contrary appearance to the public. Such unjudicial conduct cannot be condoned.

FANCHER INCIDENTDENIAL OF WITNESS FEE
The record supports the commission's finding that on or about June 30, 1975, respondent arbitrarily refused to authorize payment of a witness fee ($10.00) due Officer Richard Fancher for an offduty court appearance in obedience to a subpoena issued in a traffic case. The officer had informed the prosecutor that he could not identify the accused due to the lapse of time between the arrest and trial. This caused respondent to become irritated and resulted in his instruction to deny the payment of the witness fee. Such conduct on the part of respondent could be viewed as the use of pressure to have a police officer identify an accused regardless of how dim his memory might be. We consider such conduct detrimental to the administration of justice and to the judicial office.

JURY BALLOTING
We find that on approximately three occasions during the period in question, respondent conducted courtroom proceedings that gave the appearance of deciding the guilt or innocence of unrepresented defendants by jury ballots composed of spectators. In one instance, these so-called jurors were *308 police officers, in another, a civics class, and in still another, a cub scout group. While the evidence supports respondent's contention that he had decided the cases before taking these straw ballots, his conduct gave a contrary impression to the public. Such conduct is highly prejudicial to the administration of justice.

DISMISSAL
On one occasion, respondent caused all traffic light violation cases on the day's docket to be dismissed after the arresting officers in two previous cases were unable to identify the defendants. The dismissals were not based on the lack of evidence in those cases, but rather because of respondent's irritation caused by the inability of the police officers in the earlier cases to identify the defendants. We agree with the commission that defendant's conduct in this instance was highly improper.

IMPOSITION OF FINES
On numerous occasions, respondent imposed fines predicated on the amount of money the convicted party had on his person. No attempt was made to ascertain whether the defendants were in fact indigent or whether there were other factors that would justify a fine other than that usually imposed by the court in like instances. The only inquiry was the amount of money on the person of the defendant. This method of imposing fines is improper and prejudicial to the administration of justice.

USE OF SLANG LANGUAGE
Respondent admitted frequent use of such terms as "hey man," "bread" (money), "cat," and phrases such as "what are you holding" and "how much do you have in your shoe" (used in reference to the amount of money on the convicted party during the imposition of fines discussed above). The reason for the use of such slang, according to respondent, was to relate with blacks and so-called hippies who came before the court. While we recognize that respondent's conduct was intended to create an air of informality and a relaxed atmosphere in the courtroom, we find that his expressions were of such a nature as to cause the judicial office to be held in disrepute.[7]

CONCLUSION
We do not mean to imply that we are setting out rules for courtroom decorum, for we realize that the personality and individuality of each judge necessarily reflect in his conduct of judicial proceedings before him. Although not controlling in this matter at the time of respondent's alleged improper conduct, canon 14 of the canons of judicial ethics provided as follows:[8]
Justice should not be moulded by the individual idiosyncrasies of those who administer it. A judge should adopt the usual and expected method of doing justice, and not seek to be extreme or peculiar in his judgments or spectacular or sensational in the conduct of the court.. . .
The conduct of a judge during the course of a trial must be such as to foster confidence in the administration of justice. Persons charged with offenses are understandably uneasy in the presence of the court. They *309 should not be made to feel that their trial is a laughing matter. The trial should not be conducted in such a light-hearted manner as to give the impression that it is a farce. This would make a mockery of justice. Nor should the impression be given that the decision of the judge is based on anything other than the law and evidence adduced at trial. The flip of a coin and the use of a straw poll of the audience as jurors give such an impression even though a decision had already been reached by the judge. Generally, a judge should conduct himself in the courtroom in a manner which promotes public confidence in the integrity and impartiality of the judiciary. Public confidence in the judiciary is eroded by irresponsibility or improper conduct in the courtroom.
We conclude that respondent was guilty of persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. La.Const. art. 5, § 25(C) (1974). We concur in the recommendation of the commission that respondent judge should be censured.
Respondent takes issue with the recommendation of the commission that he be assessed with all witness and transcript costs incurred in the hearing. He urges that this is too harsh of a penalty under the circumstances. We do not agree.
Section 22 of rule 23 of the supreme court rules provides:
The commission may tax costs, subject to review by this court.
Respondent Judge was found guilty of all specifications of Charge II. Moreover, much of the testimony of the forty witnesses called on his behalf was cumulative. Under these circumstances, we are unable to say that the commission abused its discretion in assessing respondent with the specified costs. Hence, we concur in the commission's recommendation in this respect.

DECREE
On recommendation of the judiciary commission, it is ordered that Judge William H. Daniels of the city court of Baton Rouge be censured for his persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute and that he be assessed with all witness and transcript costs incurred in the hearing before the commission.
SUMMERS, Justice.
Because of the doubtful and tenuous proof on some charges, I do not agree that respondent should be cast for costs. However, his conduct does warrant censure.
CALOGERO, Justice.
Justice Summers expresses my sentiments precisely.

ON APPLICATION FOR REHEARING
PER CURIAM.
The costs are hereby fixed at $1,000. Otherwise, the application for rehearing is denied.
NOTES
[1] Except that one commissioner disagreed with the findings of paragraph C of Charge II.
[2] Five commissioners recommend that respondent judge be censured and assessed with all witness and transcript costs incurred in the hearing. Three commissioners recommend that respondent judge be suspended without salary for two months and assessed with all witness and transcript costs incurred in the hearing. One commissioner recommends discipline and assessment of all witness and transcript costs incurred in the hearing, the nature of the discipline to be determined by the supreme court.
[3] While finding respondent not guilty of Charge I, the commission stated that it found that he "committed the acts specified in Charge I, with the exception of specification G, but that Respondent so acted without illegal, immoral or evil motive, intent or purpose."
[4] See rule 23 of the rules of the supreme court adopted to implement said constitutional provision.
[5] Section 3(a) of rule 23 provides:

The Commission, upon receiving a complaint, not obviously unfounded or frivolous, alleging facts indicating that a judge is guilty of willful misconduct relating to his official duty, or willful and persistent failure to perform his duty, or persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, or conduct while in office which would constitute a felony, or that he has a disability that seriously interferes with the performance of his duties and said disability is or is likely to become permanent, shall make a preliminary investigation to determine whether a hearing should be held on the question of the discipline of the judge. The Commission may make such preliminary investigation on its own motion. (Emphasis added.)
[6] Formerly, La.Const. art. 9, § 4(B) (1921), as amended by Act No. 661 of 1968, provided:

A justice or judge may be removed from office or retired involuntarily for wilful misconduct relating to his official duty or wilful and persistent failure to perform his duty, or for habitual intemperance, or for conviction, while in office, of a felony. A justice or judge may be retired involuntarily for disability that seriously interferes with the performance of his duties and that is, or is likely to become, of a permanent character.
Clear and convincing evidence was the standard of proof required under this provision of the former constitution. In re Haggerty, 257 La. 1, 241 So.2d 469 (1970). We consider the standard of proof required in disciplinary proceedings to be the same under the new constitutional provision.
[7] An example of the air of frivolity attested to by respondent himself was his statement in shoplifting cases where pleas of guilty were entered. He testified:

. . . I have asked them on the shoplifting cases where they have pled guilty or why in the world would you want the reputation with stealing such trivia as a $6 item, you have the mentality of someone who would break into a boxcar and end up in Angola if you address it to yourself to bigger things of life. You could be Chairman of the Board of Pennsylvania Railroad, steal the whole railroad and the railroad then gets bailed out by the federal government, yes, I have engaged in that type of levity. . . .
[8] A new code of judicial conduct became effective on January 1, 1976. Canon 2(A) of the new code of judicial conduct provides:

A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.