## In re Petition of John B. Harrington

[367 A.2d 161]

No. 21-76

Present: Barney, C.J., Daley, Larrow and Billings, JJ. and Shangraw, C.J. (Ret.) Specially Assigned

Opinion Filed December 2, 1976

550

*Harold C. Sylvester*, Burlington, for Plaintiff.

*Ronald C. Schmucker*, Burlington, for Defendant.

**Per Curiam.** The petitioner seeks readmission to the Bar of Vermont after disbarment. He was removed from practice after conviction of the felony of extortion reported in *State* v. *Harrington,* 128 Vt. 242, 260 A.2d 692 (1969). See 128 Vt. 445, 266 A.2d 433 (1970). The petition was filed with the Professional Conduct Board under the provisions of Section XVII of Administrative Order No. 30. A panel was appointed, hearings held and a report filed with the Professional Conduct Board. The Board adopted that report and recommended denial of the petition for readmission.

Before consideration of the matter could be had in this Court, several affidavits and exhibits were mislaid and a taped transcript of one of the hearings inadvertently erased. As a result the petition was resubmitted to a new panel by direction of this Court.

The new five-man panel held hearings and made its report, together with findings. A majority of the panel recommended

denial of the petition, with one member concurring in the findings but recommending a probationary arrangement, and one member who dissented, filing a detailed written statement. Some members of the Board disqualified themselves, but by a seven to two vote, the recommendation of the majority of the hearing panel was accepted. The matter is now for final decision by this Court.

This Court agrees with the statement of the petitioner that this Court is the true final arbiter in this matter. It is not the function of this Court, in matters of this kind, to "review" actions taken below. The only final and ultimate decision is made here, on the responsibility of this Court. The Professional Conduct Board functions as a collator of the facts and an advisor to the Court, assembling and evaluating the presented material so that it will be in manageable form for the Court. The findings and recommendations of the Board, both as an arm of the Court and as a body representative of the profession, carry great weight. But they are not binding. *In re Monaghan,* 126 Vt. 53, 57, 222 A.2d 665 (1966).

This position is not based on any shortcomings in the Board or its members, but on the plain fact that it is upon this Court that the responsibility for regulation and discipline of the legal profession falls. Chapter II, section 30, Vermont Constitution. These are judgment matters and not susceptible to the automatic application of rules. For this reason each case must be resolved in the light of all of its own circumstances and, except in the broadest sorts of policy concerns, there is no precedential value as between cases.

In view of the duty of this Court to shield the public, as far as it can, from practitioners who would prey upon clients or misuse their training, and the concomitant responsibility to do all possible to maintain public confidence in the practicing Bar, our responses to petitions for reinstatement are thereby necessarily restricted. It is not enough that we are moved to sympathetic concern for a truly repentant former member of the profession. It is not enough that we believe a sufficient, or more than sufficient, penalty has already been exacted for his misbehavior. Disbarment is a protective device, not an additional punishment. *In re Enright,* 69 Vt. 317, 319, 37 A. 1046

(1897). The concern of the Court is required to be limited to issues relating to moral qualifications, competency and legal learning appropriate to the practice of law in Vermont, and to the determination of whether readmission will be detrimental to the administration of justice or to the integrity and standing of the Bar or that such readmission will be contrary to or inconsistent with the public interest. See Section XVII(d) of Administrative Order No. 30 of this Court.

The provisions of that order put the burden on the petitioning attorney to establish its favorable aspect of those just-stated concerns by the measure of "clear and convincing evidence". The majority of the Professional Conduct Board was not convinced that this petitioner did so, and we are required to make our evaluation from the record presented to them.

That record extensively reviews the entire professional history of the petitioner, both before and after his disbarment. Up until the events leading to the criminal prosecution, he had never been the subject of any disciplinary action. He was an active trial lawyer in his home county and had been a member of the Bar for sixteen years at the time of his trial.

Without detailing the circumstances of the criminal case, reported in 128 Vt. 242, it should be pointed out that the activities underlying the criminal charge were personally advantageous to him only insofar as they benefited his client and were not the conventional extortion situation. He was sentenced to serve ten to fifteen months at the state prison, the maximum penalty for the crime being limited to twenty-four months or a five hundred dollar fine. He in fact served four months at Windsor State Prison, then was transferred to the Burlington Correctional Center and put in a work release status. After six months he was paroled until the expiration of his term in March, 1971.

In 1972 the petitioner was convicted of driving while intoxicated. Later that same year he was issued a full pardon by Governor Davis for his felony conviction, subject to the condition to which he agreed that he never petition this Court for reinstatement to the practice of law in Vermont.

The petitioner had voluntarily ceased the practice of law when he came under investigation on the extortion charge and has not since engaged in the practice of law. He has worked

and supported his family, ultimately doing legal research and brief writing under the supervision of members of the Bar. The Board affirmatively found that the petitioner has sufficiently maintained his professional skills.

In 1974 the petitioner wrote a letter to then former Governor Davis concerning an application to Governor Salmon for a full and unconditional pardon. Governor Davis responded with a message that indicated that such an application was not in any sense a breach of faith in terms of the conditional pardon he had granted. This view was taken in the light of Governor Davis' knowledge that reinstatement was also to be sought if the pardon was granted. His evidence was that, based on an investigation made at the time the conditional pardon was granted, he believed it was not in the public interest for the petitioner to be readmitted to practice, and that he continued to be of that opinion at the time of the hearing.

Governor Salmon did grant the petitioner a full and unconditional pardon. By that time this Court had, by administrative order, established procedures governing the Professional Conduct Board. It is these procedures, since modified, that now govern petitions for readmission. Under these procedures the present petition was instituted.

By agreement, the quantity of character testimony was limited to avoid a quantitative parade. Since the facts involved were not matters of dispute, the opinions with respect to the petitioner's qualifications to practice and entitlement, or lack of it, to readmission were the principal matter before the Board. Lawyers testified on both sides, including, as already noted, former Governor Davis. Petitioner's readmission got strong support from two former Lieutenant Governors, two former Bar Presidents, a Chief Superior Judge, a member of the Board of Bar Examiners and a former Chairman of the Professional Conduct Board. There were also lay businessmen who supported readmission. There is no dispute but that these witnesses spoke from full knowledge of the issues involved and extensive acquaintance and observation of the man. It must be recognized that it is a more difficult thing for many of us to testify against a petitioner on such issues than it is to advance the more compassionate view.

■  The large circumstance that is at issue here, although not emphasized in the Board's findings, is the full executive pardon. Since we are not dealing with a penalty, the pardon does not have any automatic consequence with respect to reeligibility. The underlying conduct as representing fitness for the legal profession is still a concern, even though the criminal aspect has been excused or expunged by the pardon. Pardons are given for many reasons. If the basis were the delayed establishment of total innocence, its impact might well be different than if it were a compassion pardon given on account of age or state of health. Thus, there cannot be any automatic operation as to reinstatement based solely on the granting of a pardon. The circumstances must be examined.

■  However, the existence of the pardon does have an effect. It is an executive judgment that the consequences of a conviction of a crime, and the inferences against the accused, are to be ended. It does restore the petitioner to the position of an applicant for admission who has no criminal record, even though no responsible court could refuse to acknowledge the possibility that the undeniable fact of certain criminal conduct might still be of concern on the issue of probable fidelity to ethical standards.

■  In the case at hand the Board and the hearing panel appear to have given the pardon insufficient weight. Certainly it was a critical circumstance that interposed itself between the circumstances in 1972 when then Governor Davis issued the conditional pardon and the time of these hearings after the full pardon in 1975. It is the duty of this Court to review the evidence as it is affected by the circumstance of the full pardon, a circumstance that must favor the petitioner. We would point out in passing that we find from the evidence that there is no basis for any assertion that there is any breach of faith involved in petitioner's present application for readmission.

■  There is, in the case, a proposition suggested that there may be an "unforgiveable" crime, a crime for which readmission to practice, by the very nature of the wrong, could not be justified. This may be so. One of the kinds of offense that would lend itself to that thinking  would certainly be those

involving the breach of fiduciary duty to clients. But see *In re Paddock*, 114 Vt. 207, 42 A.2d 342 (1945). Other than that, the seriousness of the offense is not a necessary indication that readmission is unthinkable. See *In the Matter of Alger Hiss*, — Mass. —, 333 N.E.2d 429 (1975). In any event, the circumstances of this crime, already dealt with, do not lend themselves to the allocation of any permanent barrier to reinstatement.

Thus it comes down to the fact that, unlike the Board, this Court cannot find that the petitioner has failed to discharge his burden of proof under Administrative Order No. 30. We, like petitioner's counsel, find the analysis filed by the dissenting member of the Board cogent and persuasive. Based on the total record we find that the petitioner is entitled to reinstatement as a member of the Bar of Vermont.

*The petitioner, upon compliance with the licensing provision of Rule 8 of the Rules of Admission of Attorneys, shall be readmitted to practice in the courts of this State and shall be subject to the Standards of Professional Conduct as established from time to time by administrative order of this Court.*