## In re Howard W. Douglas

[382 A.2d 215]

No. 216-77

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed December 20, 1977

*M. Jerome Diamond,* Attorney General, *Gregory A. McKenzie,* Deputy Attorney General, and *Jeffrey L. Amestoy,* Assistant Attorney General, Montpelier, for Plaintiff.

*Joseph M. O'Neill* and *Henry C. Brislin,* Rutland, for Defendant.

**Per Curiam.** This is a disciplinary proceeding brought against a judicial officer pursuant to the Rules of the Supreme

Court for Disciplinary Control, 12 V.S.A. App. I, Part IV. The defendant is the Probate Judge for the District of Rutland. The issue relates to certain advertising discounts allowed to the defendant by the Rutland Herald for advertisements in the nature of probate notices, insofar as these discounts were retained to the defendant's own use.

Under these disciplinary rules a commissioner was appointed and directed to investigate the facts and report them, together with his recommendations, to this Court. Since, under Chapter II, Section 30, of the Vermont Constitution this Court has the responsibility for judicial discipline, the recommendations, although for the Court's assistance, must be taken to be advisory only. See *In re Harrington*, 134 Vt. 549, 552, 367 A.2d 161 (1976). It is this same concern for constitutional responsibility that requires the Court to examine the evidence from which the findings derive, as well. However, in this case none of the factual findings made by the commissioner are specifically challenged and the significant facts were a matter of agreement.

Howard Douglas, an attorney admitted to practice in this State, became Probate Judge February 1, 1969. When he assumed office he found a practice prevailing with respect to probate advertisements placed with the local paper, the Rutland Herald. Advertisements and legal notices required by law to be published in connection with the probate of estates and associated accountings were charged to these estates at $18.00 per publication. The newspaper billed the probate court at this rate, but allowed a discount of $2.16 for each advertisement by accepting a remittance of $15.84 as payment in full. The accumulated balance resulting from the retained funds was at first carried in the general probate court account. From time to time, the judge drew checks to his own use from this balance.

In 1974, the accounts of Judge Douglas' court were audited. In connection with that review, the auditor had this to say:

> The court has established a practice of charging publication fees at $18.00 per edition. This is the newspaper's normal rate. However, the newspaper has allowed the Court a discount of 12% - a cost of $15.84 per edition. The court has used a portion of the discounts for operating expenses and the judge has received the

balance as a commission.

We recommend that the court charge for only the net publication cost. We further recommend that all overcharges be returned to those estates which remain open or, where the estates involved are closed, the overcharges should be remitted to the State Treasurer.

We also recommend that the Court Administrator seek recovery of the discounts that were paid to the Probate Judge in the form of commissions to comply with 32 V.S.A., 1142(a) which establishes the Judge's salary "...in lieu of all fees or other compensation....".

After that time, based on recommendations made at the so-called "exit" conference in 1974, the Herald notice money was placed in a separate account and carried that way until the practice of accepting discounts was ordered discontinued by direction of this Court in January, 1977. During the period the separate account operated, it continued to be the practice of Judge Douglas to withdraw funds from this account as personal commissions. According to the findings of the commissioner, between August 1, 1973, and January 5, 1977, these withdrawals amounted to $2,459.40. Although the 1974 audit was not then in final form, in December of 1976 these advertising practices came independently to the attention of the court administrator's office. An examination of the auditor's working papers followed, which confirmed the existence of the practice.

On the basis of these facts a complaint was filed. It asserted that, aside from any breaches of the Code of Judicial Conduct as embodied in 12 V.S.A. App. VIII, A.O. 10, the provisions of four statutes were contravened. Three were criminal. Those matters were brought to the attention of the Rutland County State's Attorney. In the exercise of his prosecutorial discretion he declined to prosecute. It was then that the matter came to the Court under the disciplinary rules.

The criminal statutes involved read as follows:

13 V.S.A. § 2537. Person holding property in official capacity or belonging to state or municipality

A state, county, town or municipal officer or other person who in his official capacity receives, collects or holds money, obligations, or securities belonging to a corporation, public or private, or to a private person, who embez-

zles or fraudulently converts to his own use any of such money, obligations or securities, or a person who embezzles or fraudulently converts to his own use, money or other property belonging to the state or a municipal corporation, shall be guilty of larceny and shall be imprisoned not more than ten years or fined not more than $1,000.00.

13 V.S.A. § 3006. Neglect of duty by public officers

A state, county, town, village, fire district or school district officer who wilfully neglects to perform the duties imposed upon him by law, either express or implied, shall be imprisoned not more than one year or fined not more than $1,000.00, or both.

32 V.S.A. § 1145.—Illegal fees

A judge or register of probate who directly or indirectly accepts or receives, under color of his office, money or other valuable thing, by way of fees, remuneration or compensation for the performance of an act as such judge or register, except as provided in this title, shall be fined not more than $500.00 nor less than $200.00.

Furthermore, the provisions of 32 V.S.A. § 1142, setting the salaries of probate judges, in relevant part reads:

(a) The annual salaries of the judges of probate in the several probate districts, which shall be paid by the state in lieu of all fees or other compensation, shall be as follows:

....

(16) Rutland                    $19,870.00.

The attorney general, in prosecuting this disciplinary complaint, contended that the defendant had violated each of the statutes cited, and, further, was in violation of Canons 1, 2, and 5C(1) of the Code of Judicial Conduct. 12 V.S.A. App. VIII, A.O. 10. Before this Court the attorney general agrees with the commissioner's conclusion that the evidence does not sustain a violation of 13 V.S.A § 2537 and 13 V.S.A. § 3006, or the

violation of Cannons 1 and 2A with respect thereto. The attorney general does argue, however, that the evidence does support violations of 32 V.S.A. § 1145 and 32 V.S.A. § 1142(a) sufficient to establish violations of Canons 1, 2A and 5C(1) of the Code. The commissioner found only that the defendant was in technical violation of 32 V.S.A. § 1142(a), and that Canons 1 and 2 were involved.

Canon 1 provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Canon 2 provides:
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

Canon 5C(1) provides:
A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.

Briefly stated, it is the position of the attorney general that the authority of the probate judge to assess fees is limited to those allowed by statute, set out in 32 V.S.A. § 1434. No fee for placing the advertisements involved is listed there. From this the

attorney general contends that the retained fees constitute, in the language of 32 V.S.A. § 1145, the receipt of "money or other valuable thing, by way of fees, remuneration or compensation for the performance of an act" as probate judge.

The attorney general urges that the actions of the defendant amounted to a conversion to his own personal use of monies belonging to estates under his charge, or to the State of Vermont. He further claims that the facts establish that public supplies, public services, and a public deposit account, were improperly used for the defendant's personal gain. All this, it is charged, is sufficient to require disciplining of the defendant under the cited Canons.

The defendant does not dispute that the advertisements were placed as the facts demonstrate, or that the discounts were received by him. He attacks directly the attorney general's interpretation of the laws and canons involved.

He starts with the proposition that the statutory references to fees can only be taken to mean those fees listed in 32 V.S.A. § 1434. No fee for placing probate advertisements is included in them. Therefore, he says that the statement in 32 V.S.A. § 1142 making his salary in lieu of all other fees relates only to those of 32 V.S.A. § 1434.

In support of this view he points out that there is nothing in the law that prohibits a probate judge from engaging in business on his own time, including the practice of law. From this, he contends that a probate judge may properly have earnings not deriving from his judicial duties. He calls attention to those provisions of the Code of Judicial Conduct that exempt judicial officers who are part time from the income reporting and outside earnings provisions of Canon 5C(2), D, E, F, and G and Canon 6C.

Putting these contentions together, the defendant asserts that the probate judges in Vermont "are at no time expected to live within the salaries that are paid them." The arrangement with the newspaper is held out as a business arrangement beneficial to the estates involved and, at the same time, a proper way for the probate judge to supplement his income.

Even though his brief concedes that the fact that the defendant is the probate judge "is without doubt a reason for his being in a position to accept the commissions," he contends that the activity was not done in a judicial capacity. To support this

position he returns to the argument that since advertising discounts are not among the fees authorized by law, they therefore cannot be characterized as a judicial act performed under color of his office.

In further support of his position, the defendant points out that the placement of the ads was done by other people in his office at his request. From this, he argues that they could as well have entered into the arrangement with the newspaper, if it were willing, and received the money.

Thus the central issue in this matter is before us. It is for this Court to decide whether the actions of the defendant with respect to probate advertising were done within the scope of his judicial function. That they should be so characterized, both in fact and law, needs little additional demonstration beyond what has already been reviewed.

However, as an example of supporting evidence, the transcript reveals that the newspaper viewed the advantage of the arrangement, for which it willingly accepted the discounted payment, to be that the powers of enforcement of the probate court guaranteed payment of the advertising fee. The newspaper acknowledged that it thus avoided any collection problem.

This consideration was implemented by the authority the defendant possessed as probate judge, not upon any unrelated individual action. The testimony was that the advertising fees were collected from estates as a function of the probate office, and that final accounting before that court required payment of the advertising expense. Although not a part of the findings below, the commissioner clearly recognized this situation in his conclusions. We find these facts and circumstances so recognized and testified to, to be beyond question from undisputed testimony in the record. It is as much judicial conduct as the exercise of the authority to solemnize marriages involved in *In re Del Mauro*, 57 N.J. 317, 272 A.2d 754 (1971).

In spite of his recognition that the existence of the judicial authority of the probate court was critical to the advertising arrangement, the commissioner was unwilling to apply this legal consequence to the claimed violation of 32 V.S.A. § 1145. His recommendation in that connection is rejected.

There is no doubt but what 32 V.S.A. § 1145 applies to a situation where a judge corruptly seeks a personal fee or

remuneration for performing an act such as appointing a guardian or settling an account which the law has given him the responsibility for doing. The corruption may occur because the action of the judge is directed in favor of the person paying the unauthorized fee. The commissioner did not view the actions of this defendant as of that kind.

We agree that this case does not involve that kind of reprehensible state of mind. We accept the contention that the defendant was not performing an act for personal gain in the sense of selling the exercise of his judicial authority in favor of one party or another. However, we find the reach of the language of 32 V.S.A. § 1145 broad enough to encompass this activity. As has been noted, this proceeding is not appropriate to determine guilt or innocence in terms of criminal prosecution under that statute. But the statute is an expression of legislative intent appropriate to our consideration of violations of the Code of Judicial Conduct.

■ All of the statutes in this area already cited, carry the same message; that is, the exercise of the judicial authority of a probate judge cannot properly be used to return to him any personal gain beyond his salary. Funds collected must be handled in accordance with statutory authority: if properly assessed, paid over to the State; otherwise returned to the estate or party from whom improperly taken.

■ The burdens imposed upon those who accept judicial office by the Canons of Judicial Conduct are even higher than those required of practicing attorneys by the Code of Professional Responsibility. This is as it should be, in view of the extraordinary responsibility of judicial office. This distinction was touched upon in *Spruance* v. *Commission on Judicial Qualifications*, 13 Cal. 3d 778, 532 P.2d 1209, 1226, 119 Cal. Rptr. 841 (1975). We touch upon this distinction here to emphasize the stringency of the standards of conduct to which members of the judiciary are and must be held. The Canons of Judicial Conduct are standards measuring fitness for judicial office and therefore embrace tests of behavior relating to integrity and propriety that condemn actions in which the average citizen can freely indulge without consequence. There are many cases censuring

or otherwise penalizing judges for conduct otherwise legal and noncriminal. See, *e.g.*, *Geiler* v. *Commission on Judicial Qualifications*, 10 Cal. 3d 270, 515 P.2d 1, 8, 110 Cal. Rptr. 201 (1973); *In re Daniels*, 340 So. 2d 301, 308-09 (La. 1976). Good faith may be taken into account on disposition, but is no bar to a finding of the breach of judicial duty. *In re Hanson*, 532 P.2d 303, 316 (Alas. 1975).

So, this Court joins with the commissioner in finding violations of Canons 1 and 2, enlarging those determinations to include the contravening of the prohibitions of 32 V.S.A. § 1145. The Court further finds that Canon 5C(1) has been breached, since both the exploitation of the defendant's judicial position and the reality of transactional involvement with persons already before this Court are present. A disciplinary order is required.

*Under the authority of Chapter II, Section 30, of the Vermont Constitution, 4 V.S.A. § 3, and 12 V.S.A., App. I, Part IV, Rule 9, the Court finds a violation of Canons 1, 2, and 5C(1) of the Code of Judicial Conduct, 12 V.S.A., App. VIII, A.O. 10, on the part of the defendant Howard W. Douglas, and orders:*

*(1) That the defendant pay into the Office of the Court Administrator for appropriate distribution the sum of $2,459.40 on or before January 20, 1978;*

*(2) That the defendant be suspended from all judicial duties without salary from January 8, 1978, until January 21, 1978, and, if the payment of $2,459.40 has not been made, the suspension to continue until that amount is paid in full.*