## In re Honorable Alden T. Bryan

[674 A.2d 793]

No. 95-252

Present: Johnson, J., and Barney, C.J. (Ret.), Peck, J. (Ret.) and Dier, Supr. J. (Ret.), Specially Assigned

Opinion Filed February 23, 1996

*David A. Otterman* of *Otterman and Allen, P.C.*, Barre, for Judicial Conduct Board.

*Peter B. Joslin* and *Jeffry W. White* of *Theriault & Joslin, P.C.*, Montpelier, for Respondent.

*Matthew I. Katz*, Burlington, for Amicus Curiae Chittenden County Trial Judges.

*James R. Crucitti*, Essex Junction, for Amicus Curiae Vermont Trial Judges' Association.

**Johnson, J.** Judge Alden T. Bryan (respondent) appeals a recommendation of the Judicial Conduct Board that he be publicly reprimanded for violating Canons 1 and 2(A) of the Code of Judicial Conduct. Because we find that the alleged violations have not been proven by clear and convincing evidence, we decline to impose the sanction recommended by the Board.

## I.

The charges against respondent stem from a letter written to the Judicial Conduct Board by Peter Freyne, a journalist, alleging three instances of misconduct by respondent. The allegations relate to respondent's actions during and after a closed chambers conference held in the Chittenden District Court on December 21, 1993, in the case of *State v. McKeen*, No. 4737-7-92. Specifically, Freyne claims that respondent: (1) held a chambers conference closed to the public in violation of law; (2) directed court personnel to secretly escort the attorneys to his chambers for the conference; and (3) made untruthful statements in open court. The Board recommended dismissal of the first two allegations,[1] but found that certain statements made by respondent in open court, although not untruthful, violated Canons 1 and 2(A).

The facts as found by the Board are not in dispute. The *McKeen* trial, a widely-publicized sexual assault and kidnapping case, had concluded with a jury verdict of guilty, but reports of juror miscon-

---

[1] The Board concluded that respondent had not engaged in misconduct by holding a private chambers conference, that respondent had not directed the manner of bringing counsel to chambers, and that in fact counsel was not escorted to the conference in any particularly unusual fashion.

duct had prompted the defendant to move for a mistrial. Respondent, who presided over the trial, had the motion under advisement on December 20, 1993, when he told the clerk's office that he wanted to see counsel in the case the next afternoon. The clerk's office notified counsel, characterizing the matter as a status conference. The court schedule for December 21, 1993, indicated a status conference in the *McKeen* case scheduled for 2:00 p.m. in courtroom C.

Freyne, who was covering the case for a Waterbury radio station, arrived at the courthouse at approximately 1:40 p.m., and saw the 2:00 p.m. status conference listed on the schedule posted in the courthouse. On his way to the assigned courtroom, Freyne met the court officer assigned to respondent and mentioned that he was covering the *McKeen* status conference. The officer informed him that the conference might be in chambers, and Freyne replied that he wanted to be present wherever the matter was heard. Freyne also encountered James Murdoch, McKeen's attorney, and inquired about the status conference, but Murdoch did not know what was happening with the conference.

Returning to the bench after a lunch recess, respondent heard another matter scheduled for 2:00 p.m. Respondent then told the court officer to bring the attorneys involved in the *McKeen* case to chambers, announced a recess, and left the bench. Neither respondent nor the court officer announced that the *McKeen* status conference would be held in chambers. The court officer directed the deputy state's attorneys to chambers and left the courtroom to find a stenographic court reporter. Freyne, witnessing this activity, approached the court recorder and asked whether the *McKeen* matter would be taken up when respondent returned. The recorder told Freyne that he did not know; the recorder then left the courtroom, encountered the court officer, and told the officer that Freyne was in the courtroom asking about the *McKeen* matter.

As respondent and the state's attorneys had left the courtroom, Freyne decided to follow Murdoch, who had gone to the court clerk's office, reasoning that the conference could not start without the defendant's attorney. Meanwhile, another court officer sought out Murdoch to escort him to chambers. Freyne saw the officer take Murdoch through a locked door into the clerk's office, and followed through the door before it closed. Seeing Murdoch and the officer leaving through the back of the office, Freyne asked a court employee if respondent's chambers were back where the pair had exited. The employee said no, that respondent's chambers were on the second

floor. In fact, the court officer led Murdoch up a set of stairs to respondent's chambers.

Freyne returned to the courtroom and gave the court recorder a note for respondent, asking to attend the status conference. The recorder left the courtroom, and gave the note to the court officer, who was in the hallway outside of chambers.

Murdoch testified that, before the conference went on the record, he told respondent that Freyne was following him and wanted to know what was happening in the case. He stated that he told respondent that he was uncomfortable because he believed Freyne wanted to attend the conference, and that he felt someone should speak to Freyne. Respondent replied that Freyne was not invited to the conference. The state's attorneys present at the conference did not recall, or at least did not fully recall, this discussion about Freyne, but the Board found their lack of memory to be "less than credible."

The conference then went on the record. Although the delivery of the note is not specifically noted in the transcript, page seven of the transcript records the following exchange, reflecting the arrival of Mr. Freyne's note:

THE COURT: Well, Peter Freyne wants in here so bad he can't stand it. I am not about to put settlement negotiations on the record for the newspapers, thank you.

MR. MURDOCH: You're the judge.

THE COURT: I won't carry this conversation any further, because I don't want to fool with him. And I don't — this isn't the kind of thing we should be talking in public about.

MR. MURDOCH: I am sure Ms. Maguire and I will be inundated, and the only thing I can say is, the Judge will issue a decision shortly.

MS. MAGUIRE: Right.

(A discussion was held off the record.)

The conference ended almost immediately after this exchange. Freyne was not admitted, nor was he told why he was not admitted.

Respondent returned to the bench, and heard the next matter scheduled for that afternoon. When that case concluded, Freyne asked to address the court. The following conversation took place:

MR. FREYNE: —may I ask the Court. I believe that the Court Officer, Miss White, gave you a note of my request to

sit in on the status conference on the *McKeen* case, which is why I came here today. The Officer was aware before the hearing of my desire to attend the status conference. I just would like to ask the Court why I was not admitted.

COURT: Well, the conference was just about over by the time I received your note. We only had two or three minutes of wind up discussions, we made no rulings. I made them apprised that my decision was imminent and I would have it at the end of the week. I urged counsel to negotiate and I thought it would be a good time if they — I knew they had discussions prior to the case beginning I thought they might resume those and I showed them a letter I got from Kirk Wool which is one of the reasons I had them in. I wanted to show them that because Kirk Wool wrote me from the jail and discussions were just about over when your note came in and it was rather late to have you in there and there's nothing to report anyway.

The Board found that respondent's statement to Freyne indicating that the conference was almost over by the time he received the note was factually true. Nonetheless, the Board found that the statement implied that respondent had no knowledge of Freyne's desire to attend the conference, when in fact respondent knew before the conference began that Freyne wanted to be present. Based on this implication, the Board found by clear and convincing evidence that respondent's failure to acknowledge to Freyne that he was aware of Freyne's desire to attend the conference when it began was "deceptive, misleading and lacking in candor." The Board concluded that respondent's comments "did not display utter sincerity, honesty and candor," and did not meet the "standards of integrity" required by the Canons of Judicial Conduct.

## II.

We begin by noting that in judicial conduct proceedings this Court makes the only final and ultimate decision. *In re O'Dea*, 159 Vt. 590, 595, 622 A.2d 507, 511 (1993). The findings and recommendations of the Board carry great weight, but are advisory, not binding. *Id.*; *In re Hill*, 152 Vt. 548, 556, 568 A.2d 361, 365 (1989). Moreover, the Board's recommendation for sanction must be based on clear and convincing evidence. Rules of Supreme Court for Disciplinary Control of Judges, Rule 9(3).

The Board concluded that respondent violated Canons 1 and 2(A) of the Code of Judicial Conduct. At the time of the relevant conduct, Canon 1 provided:

> An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.[2]

Canon 2(A) provided:

> A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.[3]

The Board recognized, and we agree, that the Code of Judicial Conduct sets a standard of conduct higher than that required of other public officials. *Hill*, 152 Vt. at 570, 568 A.2d at 373. The Code does require stringent "'tests of behavior relating to integrity and propriety,'" but judges must be held to such standards to protect the integrity of the judiciary and retain public confidence in our judicial institutions. *O'Dea*, 159 Vt. at 604, 622 A.2d at 516 (quoting *In re Douglas*, 135 Vt. 585, 592, 382 A.2d 215, 219 (1977)).

Nonetheless, we are unable to conclude that respondent's comments to Freyne concerning Freyne's exclusion from the status conference constitute a violation of either Canon 1 or Canon 2(A). Although respondent's comments were factually truthful, and provided a full and accurate explanation of why Freyne could not attend the status conference, the Board recommends disciplinary sanctions based on an implication of dishonesty. Specifically, the Board argues that respondent's statement that Freyne's note did not arrive until the conference was almost over "carrie[d] with it an unmistakable implication" that respondent did not know of Freyne's desire to attend the conference until the note arrived.

---

[2] Canon 1 has since been amended to remove gender-specific references. A.O. 10, Canon 1.

[3] Canon 2(A) has since been amended to make it gender-neutral and mandatory. A.O. 10, Canon 2(A).

We find troubling the Board's willingness in this case to recommend disciplinary sanctions based on this implication, particularly where misconduct must be proven by clear and convincing evidence. This implication is not especially clear. Examining what was implied, rather than what was actually said or done, may raise intractable problems of perception and interpretation. Indeed, the Board appeared to recognize this problem when it acknowledged that respondent's view of the situation differed from Freyne's. Under some circumstances, of course, an omission can be so misleading as to render a statement simply false, but respondent's comments do not approach that level of deception.

In fact, we disagree with the Board that respondent's comments carried a misleading or deceptive implication. Respondent's reply to Freyne indicating that his note did not arrive until the conference was over must be considered in the context of both Freyne's question and respondent's entire reply. Although Freyne asked why he was not admitted, he first stated that he believed a court officer had delivered to respondent his note asking to be admitted. Freyne raised the issue of the note, and respondent told him, truthfully, that the note had arrived late. Moreover, respondent also gave the reason that the status conference was closed, namely that respondent wanted to encourage settlement negotiations. Freyne thus received an honest explanation of two issues: first, why his note received no response, and second, why the status conference was closed.

We cannot agree with the Board that respondent was required to go further, and inform Freyne that he knew at the beginning of the conference that Freyne wanted to attend. Freyne never asked that question, and the information was simply not pertinent. The Board is troubled that from Freyne's point of view there was nothing more he could do to communicate his desire to attend the conference. That may be true, but again, is not relevant. Freyne had difficulty finding the conference and informing respondent that he wanted to attend *because the conference was closed to the public.* As the dissenting member of the Board emphasized, Freyne, as a journalist, was sensitive to the exclusion of the press from the conference. The point at which respondent learned of Freyne's desire to attend the conference, however, was not relevant to his decision to hold the conference in chambers.

■ The crux of the case against respondent is the meaning of the statements made to Freyne regarding the *McKeen* status conference. As respondent's comments were not misleading or deceptive, they

could not undermine judicial integrity and independence, nor threaten public confidence in the judiciary. We conclude, therefore, that respondent did not violate either Canon 1 or Canon 2(A) of the Code of the Judicial Conduct.

*The complaint against Judge Alden T. Bryan is dismissed.*