RE: BONN BROWN

(NO. 13338)

Decided December 19, 1980.

---

A. No.

*George R. Triplett, Fowler & Paterno and John R. Fowler* for Brown.

*John O. Kizer and Robert H. Davis, Jr.,* for Legal Ethics Committee.

*DiTrapano, Jackson & Buffa and Rudolph L. DiTrapano* amicus curiae.

MILLER, JUSTICE:

The applicant in this case, Bonn Brown, seeks to be readmitted to the practice of law. On February 2, 1973, the applicant was adjudged guilty on three counts of conspiracy to commit bribery and the bribery of a juror, a Ralph Buchalew. This conviction in federal district court formed the basis for this Court's suspension of his license to practice law. *In re Brown,* 157 W. Va. 1, 197 S.E.2d 814 (1973). Upon the affirmance of his criminal conviction after an appeal, his license was annulled by this Court by order entered December 21, 1973.

Subsequently, under Article VI, Section 35 of the By-Laws of the West Virginia State Bar (Bar By-Laws), he applied for reinstatement of his license to practice law. We determined that the procedure for handling a petition for reinstatement required a factual development by way of an evidentiary hearing before the Committee on Legal Ethics of the West Virginia Bar (Ethics Committee). *In re Brown,* ____ W. Va. ____, 262 S.E.2d 444 (1980). A full evidentiary hearing has now been held before the Ethics Committee and it has filed a written report opposing the reinstatement of his license to practice law.

After our latest opinion involving Mr. Brown, we issued *In re Smith*, 166 W. Va. ____, 270 S.E.2d 768 (1980), which discussed standards for the reinstatement of a lawyer whose license had been annulled. The Ethics Committee initially contends that there are some portions of *In re Smith* that are confusing—for instance, Syllabus Point 2 suggests that after the five-year waiting period, the disbarred attorney may apply for readmission and unless the original offense which lead to disbarment "is so serious that the court cannot be satisfied that the public will be adequately protected," an attorney's license to practice will be reinstated.[1]

However, Syllabus Point 3 indicates that a disbarred attorney does initially have a burden to meet before he will be reinstated: "Where the petitioner shows a record of honorable behavior since disbarment, the petitioner's burden has been met. . . ."[2] Moreover, the majority opinion in *Smith* does refer to "the five objective criteria set forth in *Hiss* and *Brown, supra,* for determining whether a disbarred attorney should be reinstated." 166 W. Va. at

---

[1] The complete text of Syllabus Point 2 is:

"Article VI, Section 35, *By-Laws, West Virginia State Bar,* which provides that an attorney whose license to practice has been annulled may reapply for admission after five years is a rule of compassion, and unless the Court concludes that the underlying offense which caused the original disbarment is so serious that the Court cannot be satisfied that the public will be adequately protected, a lawyer's license to practice law will ordinarily be reinstated after five years of satisfactory behavior."

[2] The entire Syllabus Point 3 is:

"In a proceeding for reinstatement of an attorney's license after annulment general testimony that the petitioner either is or is not of good moral character is entitled to little weight. Where the petitioner shows a record of honorable behavior since disbarment the petitioner's burden has been met with regard to those elements which are within his control and the burden is then upon the Committee on Legal Ethics, if they wish to contest reinstatement, either to present facts and circumstances which would lead to an inference of bad character or lack of fitness to practice law, or to show that the nature of the original offense was of such gravity that the likelihood of future injury to the public is sufficiently significant that sound public policy precludes reinstatement for that reason alone."

____, 270 S.E.2d at 773 (1980; opinion withdrawn November 25, 1980). This was a specific reference to the criteria that are found in *In re Brown*, ____ W. Va. 230, 262 S.E.2d 444, 446 (1980):

"The ultimate question is whether he possesses the integrity, high moral character and legal competence to justify the reinstatement of his license. Most courts have considered a number of factual inquiries in answering this question, as illustrated by *In re Hiss*, *supra*:

'In judging whether a petitioner satisfies these standards and has demonstrated the requisite rehabilitation since disbarment, it is necessary to look to (1) the nature of the original offense for which the petitioner was disbarred, (2) the petitioner's character, maturity, and experience at the time of his disbarment, (3) the petitioner's occupations and conduct in the time since his disbarment, (4) the time elapsed since the disbarment, and (5) the petitioner's present competence in legal skills. See *Application of Spriggs*, 90 Ariz. 387, 388, n. 1, 368 P.2d 456 (1962); *In re Barton*, 273 Md. 377, 379, 329 A.2d 102 (1974); *In re Application of Strand*, 259 Minn. 379, 381, 107 N.W.2d 518 (1961); *In the Matter of the Petition of Seijas*, 63 Wash.2d 865, 868-869, 389 P.2d 652 (1964). Cf. *In re Petition of Dawson*, 131 So.2d 472, 474 (Fla. 1961).' [368 Mass. at 460, 333 N.E.2d at 437-38]"[3]

A fair reading of the entire *Smith* opinion leads to the conclusion that a disbarred attorney does have a burden of proof initially to show "a record of good behavior." There can be little doubt from our prior case law that we have always required applicants for reinstatement to carry the burden of establishing their fitness to resume the practice of law. This is the universal rule from other jurisdictions with only differences as to how clear the proof must be. *E.g. In re Reed*, 341 So.2d 774 (Fla. 1977); *Lester v. Kentucky Bar*

---

[3] The interior quote from *In re Hiss*, 368 Mass. 447, 460, 333 N.E.2d 429, 437-38 (1975), was quoted and discussed earlier in the majority opinion in *In re Smith*, 166 W.Va. at ____, 270 S.E.2d at 770 (Slip Opinion p. 3).

*Association*, 532 S.W.2d 435 (Ky. 1976); *In re Braverman*, 271 Md. 196, 316 A.2d 246 (1974); *In re Hiss*, 368 Mass. 447, 333 N.E.2d 429 (1975) (heavy burden); *In re Peterson*, 274 N.W.2d 922 (Minn. 1979) (clear and satisfactory evidence); *Petition of Simmons*, 71 Wash.2d 316, 428 P.2d 582 (1967) (affirmative showing); 7 Am.Jur.2d *Attorney at Law* § 72 (1963); Annot. 70 A.L.R.2d 268, 297 (1960).

One of our earliest reinstatement cases is *In re Daugherty*, 103 W. Va. 7, 136 S.E. 402 (1927), where the application for reinstatement was made in the circuit court where the attorney had been disbarred. The circuit court had declined to grant reinstatement and upon appeal we affirmed. This case was decided before the creation of the West Virginia State Bar under W. Va. Code, 51-1-4a, and as a consequence there were no Bar By-Law provisions covering reinstatement.[4] The Court in *Daugherty* analogized the right of reinstatement to the initial admission to the bar in that a disbarred attorney must "satisfy the court to whom the application is presented that he is a fit person to be intrusted with the office of attorney." Syllabus Point 1, in part, *In re Daugherty, supra.*

A similar situation existed in *In re Eary*, 134 W. Va. 204, 58 S.E.2d 647 (1950), involving an attorney disbarred by the circuit court who sought to regain admission to the bar by an application to this Court. We treated his application as an original application to practice law under W. Va. Code, 30-2-1, and determined that he did not prove he was of good moral character.[5]

---

[4] The annulment in *Daugherty* was done under a forerunner to W. Va. Code, 30-2-6 (1931), which permits any court before which an attorney is qualified to practice to annul his license on proof that he has been convicted of a felony. In 1931, this section was expanded to include "any other crime involving moral turpitude."

[5] The material portion of W. Va. Code, 30-2-1, which is the same now as at the time of *Eary* except that the age was dropped from twenty-one to eighteen, provides:

"Any person desiring to obtain a license to practice law in the courts of this State shall appear before the circuit court of the county in which he has resided for the last preceding year and prove to the satisfaction of such court, or to the satisfaction of a committee of three attorneys practicing before such court,

Both *Daugherty* and *Eary* established a rather general standard for reinstatement, that the applicant must be "a fit person to be intrusted with the office of attorney" or that he possess "good moral character." Both cases are significant in their recognition that the courts do possess inherent power to formulate standards for reinstatement as a part of their larger power to regulate the practice of law.

Our next reinstatement case was *In re Daniel*, 153 W. Va. 839, 173 S.E.2d 153 (1970), where Bar By-Laws did exist but contained no provision for reinstatement after disbarment. The issue was whether in the absence of a specific provision in the Bar By-Laws permitting reinstatement, a disbarred attorney could be reinstated. The Court concluded that it had inherent power to permit a reinstatement and relied on *Daugherty* and *Eary* as well as general law from other jurisdictions. The Court in *Daniel* did not discuss in any detail standards for reinstatement, but did state this general proposition in Syllabus Point 3:

> "A final judgment annulling an attorney's license to practice law does not preclude him subsequently from applying for a new license to practice law which may be granted if he meets requirements thereof and if he can satisfy the court that during the interval between licenses he has been rehabilitated and is now trustworthy."

Thus, *Daniel* implicitly recognized that a disbarred attorney must meet the following initial requirements to be readmitted to the practice of law: good moral character, professional competence, and in addition he must "satisfy the court ... he has been rehabilitated and is now trustworthy."

---

appointed by the court, that he is a person of good moral character, that he is eighteen years of age, .... The supreme court of appeals shall prescribe and publish rules and regulations for the examination of all applicants for admission to practice law, which shall include the period of study and degree of preparation required of applicants previous to being admitted, as well as the method of examinations, whether by the court or otherwise."

In *Committee on Legal Ethics v. Mullins*, 159 W. Va. 647, 226 S.E.2d 427 (1976), the Court indefinitely suspended an attorney who had been guilty of one charge of malpractice in failing to file his client's tort action before the statute of limitations expired. The Court held out the right to reinstatement "upon a satisfactory showing that his personal or emotional problems have been so satisfactorily resolved as to make it probable that he once again merits the confidence of the public and has a capacity to conform his professional conduct to the high standards expected of members of this privileged profession." 159 W. Va. at 655, 226 S.E.2d 431-32.[6]

Woven throughout our disciplinary cases involving attorneys is the thought that they occupy a special position because they are actively involved in administering the legal system whose ultimate goal is the evenhanded administration of justice.[7] Integrity and honor are critical components of a lawyer's character as are a sense of duty and fairness. Because the legal system embraces the whole of society, the public has a vital expectation that it will be

---

[6] It appears that the Court in *Mullins* conceived that the attorney suffered from an emotional condition which created the malpractice problem. It cited a note entitled *Attorney-Disciplinary Action—Mental Incapacity and Drunkenness in Mitigation Thereof*, 69 W. Va. L. Rev. 341 (1967). Under Article VI, § 26 of the Bar By-Laws, a procedure is set up for the suspension of the license of attorneys who are found to be emotionally disabled to the extent they cannot effectively function in the practice of law. This section provides for reinstatement once they are found to have regained their emotional stability. In effect, the Court in *Mullins* adopted this approach.

[7] This Court in *In re Eary*, 134 W. Va. 204, 208-09, 58 S.E.2d 647, 650 (1950), stated:

"It is the duty of this Court to scrutinize carefully the qualifications of persons who seek to be admitted to practice before the courts of this State, in order that the public may be protected and the courts assisted in the discharge of the vital duties of the administration of law and the resolving of legal controversies. If this Court permits persons to enter the profession of the law who do not have the requisite moral qualifications, it would result in debasing the profession and would bring disrepute upon the administration of justice. Thereby, the confidence of the people in their courts would be destroyed. This we cannot permit."

properly administered. From this expectancy arises the concept of preserving public confidence in the administration of justice by disciplining those lawyers who fail to conform to professional standards.

It is for these reasons that most courts have held that reinstatement of a disbarred attorney must be determined in part by ascertaining its impact on public confidence in the administration of justice and the integrity of the legal system. *E.g. In re Hiss*, 368 Mass. 447, 333 N.E.2d 429 (1975); *In re Stump*, 272 Ky. 593, 114 S.W.2d 1094 (1938); *In re Barton*, 273 Md. 377, 329 A.2d 102 (1974); *McKinnon v. Disciplinary Board*, 264 N.W.2d 448 (N.D. 1978). It is apparent the more serious the underlying offense that brought about disbarment, the more likely that public confidence will be impaired.

In addition to the public interest, there emerges from our prior cases a consistent recognition that a disbarred attorney must possess integrity, good moral character and legal competence.[8] Indeed, the standard could not be otherwise or it would conflict with the statutory standard for qualifications to the admission to the practice of law. W. Va. Code, 30-2-1.[9]

Where there has been a disbarment or annulment of the license to practice law other factors must be considered. The reason for this is that the original disbarment stands as a finding that the attorney has committed a serious breach of professional obligations or committed an offense which involves moral turpitude, and this fact continues to demonstrate a lack of fitness to practice law. As a

---

[8] The Court in *Daugherty* used the term "fit person" while in *Eary* it spoke of "good moral character." The Court in *Daniel* stated: "In the case at bar there is no denial by the State Bar that the applicant has been rehabilitated and is of good moral character." 153 W. Va. at 844, 173 S.E..2d at 156.

[9] See Note 5, *supra*. We, as well as most courts, have recognized that while this court has the inherent power to regulate the licensing of lawyers, the Legislature may in the exercise of its police power prescribe reasonable rules and regulations for admission to the bar. *In re Eary*, 134 W. Va. 204, 207, 58 S.E.2d 647, 649 (1950); *In re Application for License to Practice Law*, 67 W. Va. 213, 218, 67 S.E. 597, 599 (1910).

consequence, there is a burden on the attorney who seeks reinstatement to overcome this finding of lack of fitness.[10]

Thus, we arrive at the general rule for reinstatement which is that a disbarred attorney in order to regain admission to the practice of law bears the burden of showing that he presently possesses the integrity, moral character and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment, he must demonstrate a record of rehabilitation. In addition, the court must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration of justice, and in this regard the seriousness of the conduct leading to disbarment is an important consideration.

The concept of rehabilitation cannot be framed around a set of specific principles but will vary depending on the particular facts of a given case. Rehabilitation, ultimately, is demonstrated by a course of conduct that enables the Court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct.

It is generally agreed that in assessing an application for reinstatement consideration must be given to the nature of the original offense for which the applicant was disbarred. Obviously, the more serious the nature of the underlying offense, the more difficult the task becomes to show a basis for reinstatement.

At least one court has intimated that an original conviction of perjury and subsequent disbarment are "conclusive evidence of his lack of moral character at the time of his removal from office." *In re Hiss*, 368 Mass. 447, 451, 333 N.E.2d 429, 433 (1975). Other courts consider the

---

[10] *E.g. In re Reed*, 341 So.2d 774 (Fla. 1977); *Lester v. Kentucky Bar Association*, 532 S.W.2d 435 (Ky. 1976); *In re Braverman*, 271 Md. 196, 316 A.2d 246 (1974); *In re Hiss*, 368 Mass. 447, 333 N.E.2d 429 (1975); *In re Peterson*, 274 N.W.2d 922 (Minn. 1979); *Petition of Simmons*, 71 Wash.2d 316, 428 P.2d 582 (1967).

seriousness of the original disbarment charge as an important factor on reinstatement. *In re Bennethum*, 278 A.2d 831 (Del. 1971); *Petition of Wolf*, 257 So.2d 547 (Fla. 1972); *In re Braverman*, 271 Md. 196, 316 A.2d 246 (1974); *Application of Sharpe*, 499 P.2d 406 (Okl. 1972); *Petition of Simmons*, 71 Wash.2d 316, 428 P.2d 582 (1967).[11]

Bearing on this question is the amount of time that has elapsed since disbarment. Time provides the applicant an opportunity to build a record of good character and integrity. Most courts hold that the mere passage of time alone is insufficient to warrant reinstatement. *E.g. In re Bennethum, supra*; *Williams v. Florida Bar*, 173 So.2d 686 (Fla. 1965). However, as noted in Note 19 of *In re Hiss*, 368 Mass. 447, 460, 333 N.E.2d 429, 438, "a long time span between disbarment and petition for reinstatement during which the petitioner's conduct was exemplary, reinforce his claim to rehabilitation." Under Article VI, §25 of the Bar By-Laws, there is a mandatory five-year waiting period after disbarment before the attorney may apply for reinstatement. Even at this point, reinstatement is not automatic since this section uses the phrase "may be reinstated."

Another factor to be considered on reinstatement is the maturity and experience of the practitioner at the time of his disbarment—a recognition that a youthful and inexperienced attorney may have blundered as a result of inexperience rather than as a result of deliberate calculation. *State ex rel. Florida Bar v. Calhoun*, 102 So.2d 604 (Fla. 1958); *In re Krogh*, 93 Wash.2d 504, 610 P.2d 1319 (1980). A further important area of inquiry is the applicant's activity and conduct since the date of his disbarment since it is upon this objective record that good character must be judged. *Tardiff v. State Bar*, 27 Cal.3d 395, 612 P.2d 919, 165 Cal. Rptr. 829 (1980); *Petition of Wolf*, 257 So.2d 547 (Fla. 1972); *In re Hiss*, 368 Mass. 447, 333

---

[11] Where the initial offense is the conversion of client's funds, inquiry will be made to see if there has been restitution. *Tardiff v. State Bar*, 27 Cal.3d 395, 612 P.2d 919, 165 Cal. Rptr. 529 (1980); *Petition of Simmons*, 71 Wash.2d 316, 428 P.2d 582 (1967).

N.E.2d 429 (1975); *Petition of Harrington,* 134 Vt. 549, 367 A.2d 161 (1976).

Finally, most courts will give some weight to the recommendations of the Ethics Committee that conducts the reinstatement hearing simply because the Committee, having heard the witnesses, is in a better position to evaluate their testimony. This does not mean that the court is foreclosed from making an independent assessment of the record but it does mean absent a showing of some mistake of law or arbitrary assessment of the facts such recommendations made by the Ethics Committee in regard to reinstatement of an attorney are to be given substantial consideration. *Tardiff v. State Bar,* 27 Cal.3d 395, 612 P.2d 919, 165 Cal. Rptr. 829 (1980); *In re Wigoda,* 77 Ill.2d 154, 395 N.E.2d 571 (1979); *In re Hiss,* 368 Mass. 447, 333 N.E.2d 429 (1975); *In re Freedman,* 406 Mich. 256, 277 N.W.2d 635 (1979); *Petition of Harrington,* 134 Vt. 549, 367 A.2d 161 (1976).

Turning to the present case, we consider first the nature of the offenses leading to disbarment. These involved a conviction on three counts of conspiring to bribe and the bribery of a juror. Such offenses directly attack one of the most vital areas of our legal structure—the jury system. There can be no doubt as to the aggravated nature of such offenses, as we have stated in an early case involving the same charges, *In re Barron,* 155 W. Va. 98, 102, 181 S.E.2d 273, 275 (1971):

> "It is clear beyond question that each of the crimes of conspiracy to commit bribery and bribing a juror is a crime which involves moral turpitude. It is difficult to consider an offense which is more destructive or corruptive of the legal system of West Virginia than bribery of a juror, especially when such crime is committed by an attorney who is an officer of the Court. Bribery of a juror is a perversion of justice and strikes at the foundation of the judicial system of this State; manifestly the crimes of which Barron has been convicted upon his plea of guilty and for which he has been sentenced to imprisonment involve moral turpitude."

Much these same thoughts were expressed in another reinstatement case, *In re Keenan*, 314 Mass. 544, 548-49, 50 N.E.2d 785, 787-88 (1943), where the attorney had been disbarred for bribing a juror:

> "It is difficult to conceive of any offense that could strike a more direct and deadly blow at the administration of justice than the bribing of jurymen. An attorney at law can no more plainly demonstrate his utter failure to comprehend his peculiar duty to society or his utter abandonment of the performance of that duty than by committing this offence. It has been intimated that there may be offences so serious that the attorney committing them can never again satisfy the court that he has become trustworthy. Bar Association of City of Boston v. Greenhood, 168 Mass. 169, 183, 46 N.E. 568; Matter of Keenan, 313 Mass. 186, 219, 47 N.E.2d 12. If there are such offences, this must be one of them."

We are not aware of any case where an attorney convicted of bribing a juror has been reinstated. *In the Matter of Ansley*, 241 Ga. 394, 245 S.E.2d 657 (1978), while the court did not identify the nature of the bribery conviction (whether a public official or juror), it denied reinstatement. There the applicant had received a pardon and had spent seven years in what the court characterized as commendable efforts toward rehabilitation.

The Maryland Supreme Court has denied reinstatement to a lawyer who was convicted of an attempt to bribe a member of the general assembly. The applicant had received a full pardon and for six years had done a capable job as a State hearing officer. *Matter of Raimondi*, 285 Md. 607, 403 A.2d 1234 (1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 705, 62 L.Ed.2d 669 (1980).

Bribery of jurors had led to the original disbarment in *In re Keenan, supra*, and while the court declined to hold that such offense would forever preclude reinstatement, it did conclude:

> "Without attempting to assert that all the other instances are necessarily to be classed with this

one, and that there may not be substantial differences growing out of the nature of the offences committed or of the evidence offered, but confining our decisions to this case as outlined above, the answer is plain. It is impossible to come to any other conclusion than that the restoration to membership in the bar of the respondent Keenan would be harmful to the administration of justice, would lower confidence in the integrity of the courts . . . and would be wholly incompatible with the public interest." 314 Mass. at 551, 50 N.E.2d at 789.

The attorney in *In re Sympson*, 322 S.W.2d 808 (Mo. 1959), resigned from the practice of law before a hearing could be held to determine if he had induced two witnesses to testify falsely in an automobile accident case. Seven years later, he sought reinstatement but it was denied based primarily on the gravity of the underlying charge.

It is true that the Massachusetts court in *In re Hiss*, 368 Mass. 447, 333 N.E.2d 429 (1975), was willing to reinstate an attorney convicted of perjury, but this was only after he had been disbarred for 22 years. Moreover, favorable findings had been made by the Massachusetts Board of Bar Overseers that he was presently of good moral character and that the granting of the petition would have no adverse effect upon the integrity of the bar.[12]

Beyond, however, the extremely serious nature of the original offenses which led to Mr. Brown's initial disbarment in 1973, we are confronted with the fact that, as a defendant in another criminal proceeding, he entered a plea of *nolo contendere* and was found guilty of violating

---

[12] The Committee had refused to recommend reinstatement because the applicant had not expressed repentence but had maintained he was innocent of the underlying charge. The court concluded that while expressions of repentence were helpful, they were not critical for the reinstatement. *In re Hiss*, 368 Mass. at 455, 333 N.E.2d at 437, a position that we find to be reasonable and which other courts have adopted. *E.g. Petition of Albert*, 403 Mich. 346, 269 N.W.2d 173 (1978); *In re Barton*, 273 Md. 377, 329 A.2d 102 (1974); *Ex parte Marshall*, 165 Miss. 523, 147 So. 791 (1933); *In re Eddleman*, 77 Wash.2d 42, 459 P.2d 387 (1969).

Title 18, *United States Code*, Section 371, and conspiring to violate Title 18, *United States Code*, Section 1952, which charges involved conspiracy to bribe certain public officials of the State of West Virginia. We have previously held a violation of Title 18, *United States Code*, Section 1952, to be an offense involving moral turpitude warranting annulment of the license to practice law. *In Re Robertson*, 156 W. Va. 463, 194 S.E.2d 650 (1973).

The applicant had been disbarred for approximately two years at the time he was found guilty of this second offense involving moral turpitude.[13] While it might be argued that the 1975 conviction was for a crime committed prior to the date of disbarment, we do not view the inquiry on reinstatement as limited to the single issue of the precise offense that triggered disbarment. Most courts have concluded that applicant's prior and present record of infractions can be considered. *E.g. Tardiff v. State Bar*, 27 Cal.3d 395, 612 P.2d 919, 165 Cal. Rptr. 829 (1980); *Committee on Professional Ethics v. Wilson*, 290 N.W.2d 17, 23 (Iowa 1980); *Petition of Wolf*, 257 So.2d 547 (Fla. 1972); *In re Sympson*, 322 S.W.2d 808 (Mo. 1959).

Because of the extremely serious nature of applicant's original offense of bribing a juror when coupled with the separate conviction of conspiring to bribe public officials, we cannot help but conclude that his reinstatement would have a justifiable and substantial adverse effect on the public confidence in the administration of justice. The nature of these crimes directed as they are to the core of the legal system and the integrity of governmental institutions demonstrates a profound lack of moral character on the part of the applicant.

---

[13] It is recognized that a plea of *nolo contendere* is tantamount to a guilty plea in that both provide the basis for the imposition of criminal sentence. *Hudson v. United States*, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed.2d 347 (1926); *see, e.g. Lott v. United States*, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961); *Sullivan v. United States*, 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954). Futhermore, a plea of nolo contendere is treated identical to a plea of guilty in disbarment proceedings. Article VI, § 25 Bar By-Laws.

We have held in *Smith* that the seriousness of the underlying offense leading to disbarment may, as a threshold matter, preclude reinstatement such that further inquiry as to rehabilitation is not warranted. The offenses involved in this case manifestly meet this test and for this reason applicant's petition for reinstatement is denied.[14]

*Petition Denied.*

---

[14] Justice Harshbarger deeming himself disqualified did not participate in the decision of this case. Pursuant to the provisions of Article VIII, Section 2 of the West Virginia Constitution, the Honorable W. Robert Abbot, Judge of the 12th Judicial Circuit, was appointed to serve in his stead.