## In Re Anonymous No. 20 D.B. 80

Disciplinary Board Docket No. 20 D.B. 80.

To the Honorable Chief Justice and the Justices of the Supreme Court of Pennsylvania:

TUMOIO, *Member*, September 27, 1985—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the petition for reinstatement of [petitioner].

### I. HISTORY OF THIS PROCEEDING

On February 12, 1980, [petitioner] (hereinafter petitioner) was convicted in the United States District Court for the [    ] District of Pennsylvania of 11 counts of mail fraud and one count of perjury. On April 21, 1980, the Supreme Court of Pennsylvania suspended petitioner and referred the matter to the Disciplinary Board.

Pursuant to a petition for discipline filed by the Office of Disciplinary Counsel, a hearing committee was convened, heard the evidence, and recommended to the Disciplinary Board a two-year suspension. Exceptions to this recommendation were filed by Disciplinary Counsel, oral argument was had before the Disciplinary Board, and the board

recommended to the Supreme Court of Pennsylvania that petitioner be disbarred.

On June 17, 1982, the Supreme Court of Pennsylvania entered an order suspending petitioner for five years, retroactive to the original suspension of April 21, 1980.

On November 14, 1984, petitioner filed his petition for reinstatement. Some delays did ensue with regard to convening a hearing committee, since with the first committee a member was appointed by the Governor to the Common Pleas Bench, and with the next committee a member was away on a lengthy vacation. Nonetheless, evidence was taken by a hearing committee on March 18, 1985, and their report was filed with the Disciplinary Board on June 21, 1985. The delays in convening a hearing committee, together with the belief of petitioner's lawyer that assistant disciplinary counsel had had unauthorized contact with the Disciplinary Board led to the filing of a petition by which the Supreme Court was asked to bypass the Disciplinary Board and adjudicate the petition for reinstatement.[1] On August 2, 1985, the Supreme Court entered an order directing the Disciplinary Board to expedite the proceedings.

The hearing committee report was both extensive and excellent. The committee unanimously recommended that the petition for reinstatement be granted.

The Office of Disciplinary Counsel filed exceptions and requested oral argument before the Disciplinary Board. That argument was held before a

---

1. The transcripts of the hearings before the hearing committee show without question that assistant disciplinary counsel had no contact with the Disciplinary Board whatsoever.

panel of the Disciplinary Board on September 3, 1985. The matter came before the entire Disciplinary Board for adjudication on September 11, 1985, and accordingly, this report is filed with the Supreme Court of Pennsylvania.

## II. HISTORY OF PRIOR DISCIPLINE

Since this is a petition for reinstatement in which the burden of clear and convincing evidence of rehabilitation rests with petitioner, it is appropriate to review his entire disciplinary history.

At No. 9 D.B. 74, a petition for discipline was filed against petitioner alleging that, in seven different legal matters entrusted to him, he had violated the Disciplinary Rules. No hearing was conducted since petitioner admitted the allegations. On October 7, 1975, petitioner filed an affidavit stating his desire to resign from the Bar of the Supreme Court. On October 20, 1975, the Supreme Court accepted the petitioner's resignation and he was disbarred on consent.

Earlier in 1975, petitioner had been administered two informal admonitions on February 4, 1975, for failing to act competently with regard to client affairs, and failing to properly carry out contracts of employment.

On July 7, 1975, petitioner was again administered an informal admonition for failing to promptly pay over client funds.

On April 26, 1977, petitioner requested to be reinstated.[2] On May 16, 1977, the Office of Disci-

---

2. Normally, being disbarred upon consent would require a five-year period before petitioning for reinstatement. However, it appears that in the proceeding at No. 9 D.B. 74, the Disciplinary Board had recommended a two-year suspension. Petitioner apparently contended that he did not realize that his

plinary Counsel filed a complaint for discipline against petitioner. The complaint contended that petitioner had violated the Disciplinary Rules in three legal matters entrusted to him:

"1. An accident in which he filed a Praecipe for Writ of Summons on May 29, 1970, and apparently took no further action.

2. An accident which occurred in 1964 and with respect to which the petitioner filed a Complaint in 1967 and took no further action.

3. A 1970 personal injury in which the petitioner filed a Praecipe for Summons on December 6, 1972, and apparently took no further action."

The petition for reinstatement (No. 9 D.B. 74) and the petition for discipline (No. 17 D.B. 77) were consolidated for hearing and referred to a hearing committee. On May 11, 1978, the Disciplinary Board recommended that the petition for discipline be dismissed and that the petition for reinstatement be granted. On June 26, 1978, the Supreme Court of Pennsylvania dismissed the petition for discipline, and granted the petition for reinstatement.

## III. FINDINGS OF FACT

1. Petitioner is 63 years of age and resides at [    ].

2. Petitioner graduated from [    ] University in 1943 with a Bachelor of Arts Degree. He served in the Army from 1943 to 1946. He attended [    ] Law School for two years, but later transferred to [    ]

---

resignation would be considered a disbarment on consent. Therefore, after the two years recommended by the board elapsed, he filed his petition.

University, where he graduated with a Bachelor of Law degree in 1949.

3. Petitioner had additional military service in the Korean War, after which he was admitted to the Pennsylvania Bar in 1953, and began to practice in [ ], Pennsylvania.

4. Between 1956 and 1963, petitioner was employed by the [ ] Board; he served as a [ ] between 1963 and 1966; and, as a [ ] from 1966 to 1968. Petitioner was elected to the [ ] in 1970 and re-elected in 1974; he was defeated for re-election in the primaries of 1978.

5. Petitioner was an extremely active trial lawyer in [ ] County, especially during the period of his service in the [ ].

6. (A) On October 30, 1979, in the United States District Court for the [ ] District of Pennsylvania at no. [ ] Criminal, a true bill was found by the grand jury upon an indictment charging petitioner with 11 counts of mail fraud in violation of 18 U.S.C. 1341; and one count of perjury in violation of 8 U.S.C. 1623. The mail fraud count convictions resulted from charges that petitioner, while Chairman of the [ ] Committee, placed on the payroll of the Committee, two women who performed no duties. The perjury count was predicated upon petitioner's testimony before the grand jury that he did not know the two women were not working full time in [ ] and that they had never told him they had no work to do.

(B) On February 12, 1980, petitioner was convicted on 11 counts of mail fraud, and on one count of perjury. He was sentenced on March 12, 1980, to six months imprisonment on each count of mail fraud (each sentence running concurrently) and

fined $250 on each count. On the perjury count, petitioner was given a two-year suspended sentence. He was placed on three years probation.

(C) Petitioner served a total of four and one-half months at the Federal Correctional Institutions at [ ], and [ ]. Petitioner had an excellent record and received an early discharge for good behavior.

7. For many months after his release from prison, petitioner was unable to obtain employment. Beginning in 1982, he began to get work. Periodically during 1982 and 1983, petitioner worked for [ ] Contractors as a consultant for $100 per week, and as a truck driver and at various miscellaneous tasks for [ ] Rental Company. From 1982 until the present, petitioner has been employed as a consultant at $200 per week by [ ] Machine and Equipment Company. His duties in that employment include a wide variety of assignments: labor negotiations; general advice on proposed transactions; and representing the company's interests in dealings with the county and city administrations relative to the administration of the county airport and certain proposed real estate developments. Since late 1983, petitioner has also been employed as a legal research/paralegal by [A], Esq., and by his daughter, [B], Esq. In that capacity, he has drafted pleadings, briefs, and conducted legal research.

8. Petitioner receives a pension of $830 per month and medical coverage from the Commonwealth.

9. During the period petitioner was under suspension, he served as the law librarian at the Federal Correctional Institution at [ ]; and he has kept up to date with developments in the law by reading West's Pennsylvania Reporter and the Pennsylvania Law Journal-Reporter. Petitioner also attended the Pennsylvania Basic Practice Course sponsored by the Pennsylvania Bar Institute.

10. 11 witnesses testified before the hearing committee on behalf of petitioner: a retired minister; the Secretary of the [ ] Commission; the Mayor of [ ]; the [ ] Chief of Police; the Pennsylvania Director of [ ]; the Superintendent of the [ ]; an executive vice president of the [ ] Bank & Trust Company; the District Attorney of [ ] County; a high school teacher; the owner of [ ] Enterprises — the company by which petitioner is now employed as a consultant; and the United States Probation and Parole Officer who supervised petitioner's parole. None of the witnesses were subpoenaed to testify and all regarded themselves as friends of petitioner. Each of the witnesses testified that petitioner's reinstatement would not be detrimental to the integrity of the bar and the administration of justice, nor would it be subversive of the public interest.

11. Petitioner's petition for reinstatement lists six unsatisfied tax liens filed against petitioner by the United States Internal Revenue Service in the total amount of $17,824.32. The petition also lists two tax deficiency judgments in favor of the Commonwealth of Pennsylvania in the total amount of $1,098.77.

A third tax lien in favor of the Commonwealth in the amount of $416.10 for the year 1975 was introduced at the hearing. Evidence proffered after the hearing (at the invitation of the hearing committee) to attempt to prove satisfaction of that lien was ruled inadmissible by order of the chairman dated April 23, 1985. Also raised at the hearing, but not listed in the petition, was a judgment in favor of the [ ] Bank and Trust Company in the amount of $5,328.04 which petitioner claimed had been paid but not marked satisfied. Evidence proffered after the hearing that was admitted demonstrated that that judgment was satisfied.

## IV. DISCUSSION

Petitioner is to be evaluated for reinstatement under Rule 218 of the Pennsylvania Rules of Disciplinary Enforcement which provides in pertinent part:

"(3)(i). A disbarred or suspended attorney shall have the burden of demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest."

While it is impossible to tell whether someone is rehabilitated without looking at the past, it is important to keep in mind that petitioner's present fitness to practice law and moral qualifications are the important concern. The Supreme Court put it best in Philadelphia Newspapers, Inc. v. Disciplinary Board of the Supreme Court, 468 Pa. 382, 363 A.2d 779 (1976), by stating:

"A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension or disbarment, but rather the nature and extent of the rehabilitative efforts he has made since the time the sanctions were imposed, and the degree of success achieved in the rehabilitative process."

Clearly the least controversial criteria for readmission is petitioner's competence in the law. Petitioner completed the Pennsylvania Basic Practice Course which is a requirement for readmission. But the record, without contradiction, shows a

much higher degree of legal competency. Petitioner demonstrated that in addition to keeping abreast of changes in the law by reading advance sheets, he performed paralegal and clerking work for Attorney [A] and his daughter, [B]. The record shows that practitioners in [   ] County, specifically including his adversaries, considered petitioner a highly competent member of the legal community. See, e.g., the testimony of District Attorney [   ]. There is no testimony to the contrary.

Also, the evidence is solid that readmission will not be detrimental to the standing of the bar nor subversive to the public interest. There is no doubt that the 11 witnesses who appeared in petitioner's behalf before the hearing committee either knew or were friends of petitioner. But it is difficult to disregard the fact that all held prominent places in the [   ] community, and believed that petitioner ought to be given a chance to practice law again. All of the witnesses testified that petitioner's reinstatement would not be detrimental to the integrity and standing of the Bar, or subversive to the public interest. It is clear that petitioner's reinstatement would not have an adverse impact on public confidence in the administration of justice. See, In Re Brown, 273 S.E. 2d, 567, at 570 (W.Va. 1980); In Re Hiss, 333 N.E. 2d, 429, at 434 (Mass. 1975).

The object of substantially more scrutiny by the Office of Disciplinary Counsel, both at the hearing, and in the oral argument before the Disciplinary Board, was petitioner's moral qualifications necessary for admission to the practice of law in Pennsylvania.

The facts show that petitioner was discharged from the Federal Correctional Institutions at [   ], and [   ], early because of good behavior.

Gainful employment is an elementary criteria from which to begin the evaluation. In Re Hiss, supra. Both the hearing committee and the board were impressed by the fact that petitioner sought employment in a number of different contexts and accepted employment irrespective of the nature of the task involved. He drove a truck and did other odd jobs when other employment was not readily available. He worked at $100 per week at first, and even after assuming a position with more responsibility as a consultant, he receives only $200 per week. He also works, and is compensated by Attorneys [A] and [B] as a clerk/paralegal.

[C], the owner of [ ] Machine and Equipment Company testified that petitioner was an excellent employee and that he had no reservations in having him represent his company in the community.

The Office of Disciplinary Counsel has contended both in brief and oral argument that petitioner has not shown by clear and convincing evidence that he is rehabilitated. When questioned specifically as to the criteria that Disciplinary Counsel would consider to be a showing of rehabilitation, the response was community service, pro bono work, and going to church. The board cannot agree. In attempting to rehabilitate himself, petitioner faces the liabilities of his past. Community service is something he may be able to work into in the future, or at age 63, he may never resume. And suffice it to say that going to church can be as misleading as it can be commendable.

The fundamental consideration must be whether petitioner has conducted himself with the honor and integrity required of a member of the legal profession from April 21, 1980, until the present time. Petitioner's conduct has been good. He has worked

at whatever jobs he could find to support himself and his family. He is a well respected member of the community. And he is knowledgeable in the law. The board believes petitioner has met the criteria for reinstatement.

It should be noted that petitioner owes at least $19,000 on back taxes to the federal and state governments. However, these do not reflect adversely on his moral qualifications at present, or over the past five years. The facts show that his income dropped dramatically during the two years that he was unable to practice law while he was disbarred on consent, and the present suspension has caused an obvious reduction in income as is outlined above.

However, by making small payments over a number of years, he was able to make restitution and pay the fines resulting from his conviction. The evidence shows only that during the period of his suspension, petitioner has been financially unable to satisfy the tax judgments against him. There is no evidence whatsoever that petitioner ever failed to file a tax return, or that he attempted to avoid or limit his tax liability.

There has been a clear and convincing demonstration on the record of sufficient moral qualification, competency, and learning in the law to justify petitioner's readmission to the practice of law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the petition for reinstatement be granted. Costs are to be paid by petitioner.

Messrs. Schwartzman, Mundy and Padova did not participate in the adjudication.

## ORDER

LARSEN, *J.*, And now, this November 22, 1985, the recommendation of the Disciplinary Board dated September 27, 1985, is accepted, and the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Chief Justice Nix did not participate in the consideration of decision of this matter.