**FILED**
**November 10, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re:  Petition for Reinstatement of David D. Perry**

**No. 19-1180**

# MEMORANDUM DECISION

David D. Perry petitions the Court a second time for reinstatement of his law license, which the Court suspended indefinitely in 2011 after he engaged in inappropriate telephone conversations with the wife of his jailed client.  The Hearing Panel Subcommittee (HPS) conducted a hearing and recommended the Court conditionally reinstate Mr. Perry.  The Office of Disciplinary Counsel (ODC) does not object to HPS's recommendation.[1]  Because Mr. Perry has complied with the requirements of the 2011 suspension order and satisfies the rehabilitation factors explained in *In re Reinstatement of Ditrapano*,[2] the Court grants his petition for reinstatement, subject to certain conditions.  A memorandum decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure since this matter presents no substantial question of law or fact.

## I.  Factual and Procedural History

In 2009, Mr. Perry defended Christopher Cline against several criminal charges at the request of Mr. Cline's then-wife Christine Cline (now Christine Tidwell).  Mr. Cline was incarcerated before and during Mr. Perry's representation.  Ms. Tidwell recorded phone conversations she had with Mr. Perry in which Mr. Perry made sexual advances toward her when she called to discuss Mr. Cline's case.  Ms. Tidwell gave the recordings to Michael Sparks, who then served as Mingo County Prosecuting Attorney.  Mr. Sparks told Mr. Perry about the recordings, so Mr. Perry met with Mr. Cline in jail where he told him Ms. Tidwell's allegations were false and demanded Mr. Cline pay outstanding legal fees.  Mr. Perry withdrew from Mr. Cline's case shortly after the meeting; he told Mr. Cline in a letter that his reason for withdrawing was Mr. Cline's failure to pay and a breakdown in the attorney-client relationship.  Mr. Perry did not appear for an ensuing hearing in Mr. Cline's criminal case after the circuit court demanded his attendance.

Mr. Cline filed an ethics complaint against Mr. Perry on June 23, 2009.  Mr. Perry was not truthful in responding to the allegations in Mr. Cline's complaint.  ODC filed formal charges against Mr. Perry on December 3, 2010 and had to serve Mr. Perry by publication because he

---

[1] David D. Perry is self-represented. The Office of Disciplinary Counsel is represented by Rachael L. Fletcher Cipoletti, Esq.

[2] 240 W. Va. 612, 814 S.E.2d 275 (2018).

1

moved to Las Vegas, Nevada when he learned of the ethics complaint and "anticipated a bad result." Mr. Perry did not participate in the proceeding, and the Court suspended his law license indefinitely on December 1, 2011. The Court also required Mr. Perry to pay costs of the disciplinary proceedings, undergo a psychiatric evaluation before petitioning for reinstatement, comply with any suggestions of the evaluator after being reinstated, and have his law practice supervised for two years upon reinstatement.

In 2017, we summarily denied Mr. Perry's first petition for reinstatement. Mr. Perry filed the current petition in December 2019, and HPS conducted a hearing in November 2020. Current circuit and family court judges testified on Mr. Perry's behalf at the hearing, and Mr. Perry provided evidence of his various jobs since his suspension including coaching youth sports. A licensed psychologist evaluated Mr. Perry in January 2021 and reported to HPS that he is mentally fit to practice.

HPS found in its Report that "[Mr. Perry's] transgressions were serious [] and warranted the harsh punishment he received[,]" but he now accepts full responsibility for his misconduct and "has demonstrated a record of honorable behavior since his suspension." HPS, therefore, recommended his reinstatement, reasoning that "there is little likelihood that after he is readmitted . . . he will engage in unprofessional conduct" and "[t]he evidence is void of any reason the public confidence in the administration of justice would be adversely affected by the reinstatement. . . ."

HPS recommended that the Court reinstate Mr. Perry with the following conditions:

> (1) if [he] returns to the active practice of law in the State of West Virginia, [he] must undergo supervised practice of law for a period of two years by a supervising attorney agreed upon between the ODC and [Mr. Perry]. The supervising attorney will file monthly reports with the ODC; (2) If [he] returns to the active practice of law in the State of West Virginia, [he] must undergo psychotherapy for one year, or for a period of treatment to be determined by his therapist or counselor to better understand the nature and construction of his personality, including how his character traits may negatively affect his perceptions and behaviors and their impact on others. Further to ensure that [he] is meeting this requirement, the ODC should receive quarterly updates on the psychotherapy, and a report at the end of treatment that no further treatment is needed; (3) [he] complete any requirements as ordered by the West Virginia State Bar regarding his CLE requirements and dues prior to reinstatement; and, (4) [he] be ordered to pay the costs of this reinstatement proceeding pursuant to Rule 3.15 of the Rules of Disciplinary Procedure prior to reinstatement.

ODC agrees with the recommendation.

## II. Standard of Review

"This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."[3] In reviewing HPS findings and recommendations, we have held that

> [a] *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.[4]

## III. Analysis

The parties do not dispute HPS's findings of fact, so we need not revisit them. We instead apply the facts to the law *de novo*. The standard for reinstatement is long-established:

> The general rule for reinstatement is that a disbarred attorney in order to regain admission to the practice of law bears the burden of showing that he presently possesses the integrity, moral character and legal competence to resume the practice of law. To overcome the adverse effect of the previous disbarment he must demonstrate a record of rehabilitation. In addition, the [C]ourt must conclude that such reinstatement will not have a justifiable and substantial adverse effect on the public confidence in the administration of justice and in this regard the seriousness of the conduct leading to disbarment is an important consideration. [5]

In sum, "[r]ehabilitation is demonstrated by a course of conduct that enables the [C]ourt to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct."[6]

---

[3] Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

[4] Syl. Pt. 2, *Ditrapano*, 240 W. Va. 612, 814 S.E.2d 275 (quoting Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994)).

[5] Syl. Pt. 1, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980).

[6] *Id.* at Syl. Pt. 2.

3

Specifically, the Court considers the following five factors to determine whether a lawyer is sufficiently rehabilitated:

> (1) the nature of the original offense for which the petitioner was disbarred; (2) the petitioner's character, maturity, and experience at the time of disbarment; (3) the petitioner's occupations and conduct in the time since his disbarment; (4) the time elapsed since the disbarment; and (5) the petitioner's present competence in legal skills.[7]

In examining these five factors, we initially note that Mr. Perry's transgressions were undoubtedly serious. He undermined the public's trust in the legal system by creating a conflict of interest with and showing a disregard for his jailed client. Mr. Perry had been licensed to practice in West Virginia for over ten years at the time of his indefinite suspension, so we cannot conclude that immaturity and inexperience were to blame for the serious transgressions, his lack of candor to ODC, or his flight from West Virginia to avoid disciplinary proceedings.

But ten years have passed, and Mr. Perry now demonstrates some level of "maturity that was lacking as of the date of his [indefinite suspension]"[8] by accepting responsibility for his actions and seeking self-improvement. HPS found that "[t]he evidence . . . reflects that [Mr. Perry] has demonstrated great remorse for his previous misconduct, has acknowledged the severity of such, and appears to accept full responsibility thereof[,]" and we see no reason to disturb the finding.[9] The testimony of Mr. Perry's past employers, evidence of his youth assistance, and clean

---

[7] *Ditrapano*, 240 W. Va. at 617, 814 S.E.2d at 280 (citing *In re Smith*, 214 W. Va. 83, 85, 585 S.E.2d 602, 604 (1980)).

[8] *Ditrapano*, 240 W. Va. at 618, 814 S.E.2d at 281.

[9] At first glance, some of Mr. Perry's statements in the HPS proceedings and his brief in support of his petition for reinstatement caused skepticism of HPS's finding of remorse and responsibility. For example, Mr. Perry stated in his brief that

> [Ms. Tidwell] offered false testimony under oath, failed to disclose that she had been directed by the Williamson Police Department and West Virginia State Police to lie, and did not disclose that the two law enforcement agencies had provided her . . . with a recording device and tapes for the purpose of recording [Mr. Perry]. Office of Disciplinary Counsel attorney Jessica Donahue was 100% aware of these facts but did not illicit [sic] or introduce into evidence via questioning of complainant under oath.

But, at oral argument, Mr. Perry did clarify his position on this point and otherwise expressed remorse and responsibility for his actions, and the Court accepts HPS's finding.

public record since his suspension also indicate rehabilitation. Most significantly, the ten-year suspension permitted Mr. Perry time to accrue a record of reputable conduct, which he did by maintaining employment and coaching youth sports, among other things. Mr. Perry's required Continuing Legal Education (CLE) and supervised practice will promote legal competence despite Mr. Perry's lengthy absence from the profession.

So, the Court agrees with HPS's finding that Mr. Perry is unlikely to engage in future unprofessional conduct in West Virginia, especially considering the conditions of his reinstatement. The conditions assure us that Mr. Perry's readmission will have no justifiable and substantial adverse effect on the public confidence in the administration of justice. We also note that the near ten-year suspension of Mr. Perry's license sufficiently punished him and deters other lawyers from similar wrongs.[10] Indeed, "the primary purpose of [lawyer discipline] is not punishment but rather the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys."[11]

We also note the condition that Mr. Perry undergo psychotherapy is appropriate if Mr. Perry returns to practice in West Virginia. While the expert psychological evaluation considered by HPS indicates that he is fit for reinstatement, the report stated that Mr. Perry would benefit from ongoing counseling, so we honor the Court's 2011 suspension order which required Mr. Perry to comply with any suggestions of the evaluator. The need to safeguard public confidence also warrants the condition.

For the reasons set forth above, the Court reinstates Mr. Perry's law license, effective immediately, subject to HPS's recommended conditions stated above. The Clerk is directed to issue the mandate contemporaneously with this decision.

Petition for Reinstatement Granted, with conditions.

**ISSUED:** November 10, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

---

[10] *See* Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Markins*, 222 W. Va. 160, 663 S.E.2d 614 (2008) (quoting Syl. Pt. 3 *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150 (1987)).

[11] *Comm. on Legal Ethics v. Pence*, 171 W. Va. 68, 74, 297 S.E.2d 843, 849 (1982) (citation omitted).

**DISSENTING AND WRITING SEPARATELY:**

Justice Tim Armstead


ARMSTEAD, Justice, dissenting:

David D. Perry was rightfully suspended from the practice of law by this Court for serious ethical issues stemming from his prurient pursuit of sexual favors from his jailed client's wife in exchange for a reduced legal fee. It is difficult to imagine a factual scenario that may do more to undermine public confidence in the integrity of the legal profession in our state. Such conduct was a serious affront not only to Mr. Perry's client and his then wife, but also cast a shadow on our state's legal profession as a whole.

Inexplicably, the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board and the Office of Disciplinary Counsel recommends to this Court that Mr. Perry be reinstated. This reinstatement was recommended subject to certain terms and conditions detailed in the majority opinion. One of those conditions is that:

> If [he] returns to the active practice of law in the State of West Virginia, [he] must undergo psychotherapy for one year, or for a period of treatment to be determined by his therapist or counselor to better understand the nature and construction of his personality, including how his character traits may negatively affect his perceptions and behaviors and their impact on others.

Regarding this condition, the majority notes that "the condition of psychotherapy is appropriate for Mr. Perry if he returns to practice in West Virginia. While the expert psychological evaluation considered by HPS indicates that he is fit for reinstatement, we recognize the need to safeguard public confidence."

A year ago, this Court annulled the law license of a lawyer who sought sexual favors from a prospective client in exchange for legal services. *See Lawyer Disc. Bd. v. Hatfield*, 244 W. Va. 285, 852 S.E.2d 785 (2020). In that matter, this Court stated it "cannot and will not condone the type of conduct engaged in by Mr. Hatfield." *Id.*, 244 W. Va. at ___, 852 S.E.2d at 798.

I acknowledge the majority's desire to permit Mr. Perry to be reinstated in light of the time period that has passed since the conduct that gave rise to this action. However, the HPS and the majority opinion both recognize the need for Mr. Perry to undergo psychotherapy to safeguard public confidence. I firmly believe that such a need in this case supports my belief that Mr. Perry is not currently an appropriate candidate for reinstatement.

In addition, the majority recognizes, in Footnote 9 of the memorandum decision, that some of Mr. Perry's statements in the HPS proceedings and his brief "caused skepticism" of

HPS's findings of remorse and responsibility.  Mr. Perry's statements from his brief, as cited by the majority in Footnote 9, certainly do not reflect remorse or acceptance of responsibility by Mr. Perry for his actions.  Instead, they appear to cast blame on others, including his client's now ex-wife from whom he sought sexual favors.

Based on the egregious conduct in which Mr. Perry has engaged, and the fact that he has not shown appropriate remorse or proven adequate rehabilitation, I believe reinstatement of Mr. Perry to the practice of law does not safeguard public confidence in our legal system. Accordingly, I respectfully dissent from the majority's opinion in this matter.