No. 23-71, *In re Petition for Reinstatement of C. Michael Sparks*

Walker, Justice, dissenting, and joined by Justice Trump:

**FILED**

**May 22, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I respectfully disagree with the majority's decision to deny C. Michael Sparks's petition for reinstatement to the West Virginia State Bar. Mr. Sparks established by clear and convincing evidence that he "presently possesses the integrity, moral character and legal competence to resume the practice of law," has an exemplary "record of rehabilitation," and that his reinstatement will not have an "adverse effect on the public confidence in the administration of justice[.]"[1] For these reasons, I would accept the recommendation of the Hearing Panel Subcommittee that Mr. Sparks be reinstated to the practice of law with a two-year period of supervision, along with its other recommendations.

Any fair analysis requires that we compare this case to *In re Reinstatement of diTrapano*[2] ("*diTrapano II*"), where this Court granted Mr. diTrapano's second petition for reinstatement to the practice of law. In *diTrapano II*, we concluded that Mr. diTrapano's conviction of two felony offenses, while serious, did not preclude his reinstatement, given his record of rehabilitation.[3] Likewise, in this case, the HPS

---

[1] Syl. Pt. 1, in part, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980) (*Brown II*).

[2] 240 W. Va. 612, 814 S.E.2d 275 (2018).

[3] *Id*. at 617, 814 S.E.2d at 280.

1

determined that Mr. Sparks's misdemeanor conviction—for aiding and abetting deprivation of a constitutional right under color of law under 18 U.S.C. § 242—was not the type of crime that should forever bar Mr. Sparks from proving that he has met the requirements to practice law again. While not downplaying the seriousness of the misconduct that led to his disbarment, the HPS gave great weight to the fact that Mr. Sparks cooperated fully with the FBI's investigation into a political and judicial corruption scandal in Mingo County involving former Judge Michael Thornbury. He provided substantial information to authorities and cooperated with the investigation without any promise of immunity or plea agreement. As part of his guilty plea to a misdemeanor, Mr. Sparks resigned as prosecutor and consented to disbarment. He successfully completed his prison sentence and has since taken substantial steps to be a productive citizen.

The central question in this case is whether Mr. Sparks has overcome the adverse effect of his admitted and serious misconduct by demonstrating a record of rehabilitation. "This Court has held that '[r]ehabilitation is demonstrated by a course of conduct that enables the court to conclude there is little likelihood that[,] after such rehabilitation is completed and the applicant is readmitted to the practice of law[,] he will engage in unprofessional conduct.'"[4] The letters written in support of Mr. Sparks's petition for reinstatement from lawyers who have known him personally and professionally since he began practicing law in 1996, as well as friends, the current Mingo County Prosecuting

---

[4] *diTrpano II*, 240 W. Va. at 617, 814 S.E.2d at 280 (quoting Syl. Pt. 2, *Brown II*, 166 W. Va. at 226, 273 S.E.2d at 567).

2

Attorney, and community leaders show that Mr. Sparks's post-annulment conduct has been exemplary. Where the evidence is uncontradicted, as it was here, and shows admirable conduct extending over a period of ten years without even a suggestion of wrongdoing, rehabilitation had been established. The record belies the majority's claim that Mr. Sparks "has failed to presently demonstrate the requisite rehabilitation, integrity, and fitness to be returned to the practice of law."

In its forty-two-page report, the HPS made extensive findings on all the relevant *Brown II* factors such as Mr. Sparks's character, maturity and legal competence to resume the practice of law and record of rehabilitation.[5] The majority's analysis brushes aside many of the HPS's critical findings to focus extensively on subtle differences in Mr. Sparks's testimony (before the federal district court when he entered his guilty plea and before the HPS in this matter) in order to conclude that Mr. Sparks lied because he "offered

---

[5] *Brown II* identifies five areas that should be investigated and evaluated when considering a reinstatement petition. These factors include, but are not limited to,

> (1) the nature of the original offense for which the petitioner was disbarred, (2) the petitioner's character, maturity, and experience at the time of his disbarment, (3) the petitioner's occupations and conduct in the time since his disbarment, (4) the time elapsed since the disbarment, and (5) the petitioner's present competence in legal skills[.]

*Brown II,* 166 W.Va. at 229, 273 S.E.2d at 568.

two contradictory accounts of his misconduct" to minimize his culpability, similar to the facts presented in *In re Reinstatement of diTrapano*,[6] ("*diTrapano I*).

The HPS discussed the apparent discrepancy in Mr. Sparks's testimony extensively in its report and determined that even though the district court questioned Mr. Sparks's statement that his role in the scheme to deprive George White of the attorney of his choosing was passive, the district court "gave him the benefit of the doubt and accepted his guilty plea." The HPS found that Mr. Sparks's "testimony before this Hearing Panel was consistent with the proffer given by Assistant United States Attorney Steven R. Ruby . . . in the District Court, which the District Court accepted after acknowledging that the proffer varied in some respects from the stipulation in the Information." This finding is entitled to deference because a question of dishonesty is often the quintessential credibility call.[7] Any equivocation in Mr. Sparks's testimony goes to the extent of his active involvement in the conspiracy and Mr. White's actual injuries. Critically though, he never denied wrongdoing.

Regrettably, the members of the majority appear to be projecting their own perceptions about the extent of Mr. Sparks's participation in the Mingo County political

---

[6] 233 W. Va. 754, 760 S.E.2d 568 (2014).

[7] *See Law. Disciplinary Bd. v. Cunningham*, 195 W. Va. 27, 34, 464 S.E.2d 181, 188 (1995) (acknowledging that the HPS "hears the testimony of the witnesses firsthand and, being much closer to the pulse of the hearing, is much better situated to resolve such issues as credibility" (quoting *Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W. Va. 286, 290, 452 S.E.2d 377, 381 (1994)).

and judicial scandal and unfairly punishing him for the crimes of former Judge Thornbury. The majority extensively discusses the Thornsbury indictment and insinuates that Mr. Sparks must also be guilty of other crimes, without affording him the basic benefit of a trial.[8] The majority disregards the fact that a person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt.[9] In the same way, the majority faults Mr. Sparks for the Office of Disciplinary Counsel's unilateral decision to not reopen and investigate complaints that it closed a decade ago. Then, on a cold record and without evidentiary basis, the majority declares that several of the rule violations asserted by the ODC in those other cases "would likely have been substantiated had he not consented to the closure of those matters as part of his disbarment[.]"[10] This ignores Mr. Sparks's constitutional right to due process and improperly disregards the fact that it was never his burden to prove his innocence of those charges.[11]

---

[8] Majority opinion at note 6.

[9] *In re Winship*, 397 U.S. 358 (1970); *see also Coffin v. U.S.*, 156 U.S. 432, 453 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.").

[10] Majority opinion at note 9.

[11] The harsh tone of the majority's discussion runs afoul of the purpose of this proceeding, which is "the reassurance of the public as to the reliability and integrity of attorneys[,]" not punishment. *Comm. on Legal Ethics v. Pence*, 171 W. Va. 68, 74, 297 S.E.2d 843, 849 (1982) (citation omitted).

Like *diTrapano II*, where this Court fairly considered the *Brown II* factors, there is no reason the public confidence in the administration of justice would be adversely affected by the reinstatement of Mr. Sparks's law license. He has served the sentence imposed on him in the criminal proceeding, shown an exemplary record of rehabilitation, accepted responsibility for his actions, and made full restitution. A lawyer who wrote in support of Mr. Sparks's petition for reinstatement stated that "[w]hile regaining the privilege of practicing law as a member of the West Virginia State Bar after disbarment shouldn't be a simple, quick or easy process, at the same time the path to redemption and reinstatement shouldn't be an impossible one." I agree.

A disbarred lawyer who, as the evidence before us demonstrates, has redeemed himself and is a competent legal advocate should not be kept out of the profession to which he has devoted much of his life and means. Unless our decisions are based on evidence and the rule of law uniformly applied, they are nothing more than arbitrary determinations that change from time to time according to the whims of the individual members of the Court; when that occurs, we have a government of men and not of law.